No. 23-15702

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SANDRA M MEZA-PEREZ
Plaintiff-Appellant,

v.

SBARRO LLC et al..,
Defendant-Appellee.

Appeal from United States District Court for the Southern District of Nevada
Civil Case No. 2:19-cv-00373-APG-EJY

## PLAINTIFF-APPELLANT'S
## OPENING BRIEF

HARDEEP SULL, ESQ.
Nevada State Bar No. 12108
SULL AND ASSOCIATES PLLC
3753 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Tel: (702) 953-9500
E-Mail: dee@sullglobal.com

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………...…….…..iv

JURISDICTIONAL STATEMENT……………….…………………….viii

ISSUES PRESENTED……………………………………….…………. viii

STATEMENT OF THE CASE………………………………………………1

STATEMENT OF FACTS…………………………………….……………..8

SUMMARY OF THE ARGUMENT………………………...…………9

ARGUMENT…………………………………………………….………..11

   1. Appellant's Motion(s) for a Mistrial Should Have Been Granted for Attorney Misconduct…………………………………………………….…….11

   2. District Court's Order Denying Appellant's Post-Trial Motions, and in Ruling on Trial Objections, was Erroneous and Warrants Reversal…………………19

   3. The Jury Verdict was Not Supported by the Evidence……………………..37

   4. The District Court Erred in Granting in Part Defendants' Motion for Summary Judgment (ECF 181)………………………………………..……………..38

   5. Prejudicial Pretrial Rulings on Procedural Matters Warrant Reversal – Withdrawal of Counsel, Trial Timing, Discovery………………..…………45

   6. The District Court's rulings, set forth in Minute Order 342, must be reversed as erroneous and abuse of discretion…………………………………………48

   7. The Orders of Attorney's Fees, Costs Taxed, and Bill of Costs, should all be Vacated and Set Aside……………………………………………… 51

   8. The District Court's Ruling, set forth in Minute Order ECF 381, must be reversed for their erroneous denial of Plaintiff's Motion to Reconsider (ECF 350) and the Court's ruling as to each sides' peremptory challenges………..51

9.  The District Court's rulings, set forth in Minute Order 319, must be reversed as erroneous and an abuse of discretion……………………………………...53

10. Golden Rule Arguments During Closing Arguments Require Reversal Under Plain Error…………………………………………………………………54

CONCLUSION ......................................................................................................59

CERTIFICATE OF COMPLIANCE…………………………………………..60

CERTIFICATE OF SERVICE………………………………...………………61

# TABLE OF AUTHORITIES

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 709 F.3d 872 (9th Cir. 2013)…...52

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)…………………………39

*Ateeq v. Najor*, 19 Cal. Rptr. 2d 320 (Cal. Ct. App. 1993)……….…………..40,41

*A.W. v. I.B. Corp.*, 224 F.R.D. 20, 24 (D. Me. 2004)………………………………27

*Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223 (9th Cir. 2000)……………20

*Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)……………..…..45

*Brooks v. Cnty. of San Joaquin,* 2012 WL 5927416, at *1 (E.D. Cal. November 26, 2012)………………………………………………………………………………49

*Bufford v.Rowan Cos.*, 994 F. 2d 155, 157 (5th Cir. 1993)……………….……..12

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)……………………………43

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)………………………………39

*Charyulu v. California Cas. Indem. Exch.*, 2:08-cv-1199-RCJ-RJJ, at *10-11 (D. Nev. July 5, 2011)……………………………………………………….…….23,36

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000)…………..48

*Davie v. Mitchell*, 291 F.Supp.2d 573, 617 (N.D. Ohio 2003)……………..…..35

*Dunegan v. City of Council Grove, KS*, 189 F.R.D. 649, 652 (D. Kan. 1999)…….26

*EEOC v. Luce, Forward, Hamilton Scripps,* 345 F.3d 742, 746 (9th Cir. 2003)……38

*Ellison v. Brady,* 924 F.2d 872 (9th Cir. 1991)…………………………………...…44

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842, 845 (9th Cir. 2014)……………………………………………………………..…………..23

iv

*Fernandez v. Centric,* No. 3:12-CV-00401-LRH, 2014 WL 2042148, at *3 (D. Nev. May 16, 2014)……………………………………………..…………..54

*Fields v. Woodford*, 309 F.3d 1095, 1109 (9th Cir.)……………………….……54

*Fireman v. Armstrong World Indus.*, 980 F.2d 171, 209 (3d Cir. 1992)……….……12

*Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)……………………..….…31.32

*Green v. City and County of San Francisco,* No. 10–cv– 2649, 2015 WL 1738025, at *4 (N.D.Cal. Apr.8, 2015)……………………………………..…………49

*Hernandez v. Vanveen*, No. 2:14-cv-01493-JCM-CWH, at *2 (D. Nev. Mar. 28, 2016)………………………………………………………………..……32

*In re Amerco Derivative Litig.*, 252 P.3d 681, 695 (Nev. 2011)……………….…..40

*In re Northrop Grumman Corp. ERISA Litig.*, 2016 WL 6826171, at *3 (C.D. Cal. Apr. 7, 2016)……………………………………………….……………….49

*Jaynes Corp. v. Am. Safety Indem. Co.*, No. 2:10-cv-00764-MMD-GWF, at *8-9 (D. Nev. Mar. 20, 2014)…………………………………………………..…..35

*Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984)
*Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010)………………….…..12,16,33

*Landes Const. Co., Inc. v. Royal Bank of Canada,*833 F.2d 1365, 1370-71 (9th Cir. 1987)…………………………………………………………….…37

*Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006)……………….…..31

*Mathis v. Cnty. Of Lyon*, No. 2:07-cv-00628-APG-GWF, at *3 (D. Nev. Sep. 9, 2016)……………………………………………………………….……23

*McWhorter v. City of Birmingham*, 906 F.2d 674, 677-78 (11th Cir. 1990)………...34

*Meza-Perez v. Sbarro LLC*, 2:19-cv-00373-APG-EJY, at *11-13 (D. Nev. Apr. 6, 2023)………………………………………………….……………16

*Miesen v. Henderson,* No. 1:10-CV-00404- DCN, 2022 WL 392931, at *2 (D. Idaho Feb. 9, 2022)…………………………………………………………….……49

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)……………….……22,23

*Obrey v. England,* 215 F. App'x 621 (9th Cir. 2006)………………….……….50

*Polk v. Cavin*, 447 F. App'x 840, 842 (9th Cir. 2011)……………….………..41

*Rebel Commc'ns, LLC v. Virgin Valley Water Dist.*, No. 2:10-CV-0513-LRH-GWF, 2015 WL 5430297, at *2 (D. Nev. Sept. 14, 2015)……………………….....49,50

*Rhodes v. Motion Indus., Inc.*, No. 1:07-CV-251, at *6 (E.D. Tenn. Oct. 17, 2008)..27

*Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995)…………...23

*Sch. Dist. No. 1J, Multnomah Cnty., Or. v. AC and S, Inc.,* 5 F3d. 1255, 1263 (9th Cir. 1993)…………………………………………………………………….…….21

*Socks-Brunot v. Hirschvogel Inc.*, 184 F.R.D. 113 (S.D. Ohio 1999)……………….36

*Socop–Gonzalez v. INS*, 272 F.3d 1176, 1195 (9th Cir.2001)……………………...42

*Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018)………………..39

*Soule v. P.F. Chang's China Bistro, Inc., No.* 218CV02239GMNEJY, 2020 WL 959245, at *4 (D. Nev. Feb. 26, 2020)………………………………………..……53

*S.M. v. J.K*, 262 F.3d 914, 920 (9th Cir. 2001)……………………………….……27

*Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 203 (2d Cir. 2014)…………..….……25

*Standard Oil Co. of Cal. v. Perkins,* 347 F.2d 379, 388 (9th Cir. 1965)………….16,33

*Stewart Title Guar. Co. v. Suisse,* 2014 WL 10290846, at *2–3 (D. Idaho Oct. 15, 2014)……………………………………………………………………….…….49

*Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1147–48 (E.D. Cal. 2020)…………...50

*Transgo, Inc. v. Ajac Transmission Parts Corp.,*768 F.2d 1001, 1024 (9th Cir. 1985)…………………………………………………………………………37

U*nited States. v. Doss*, 630 F.3d 1181, 1195 (9th Cir. 2011)……………………..54

*United States v. Flynt,* 756 F.2d 1352, 1358 (9ᵗʰ Cir.1985)……………………46,47

*United States v. Marsh*, 451 F.2d 219, 220 (9th Cir. 1971)………………..…..…..29

*United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999)……………..……..…..54

*United States v. Segal*, 852 F.2d 1152, 1155 (9th Cir. 1988)………………………..11

*United States v. Washington,*98 F.3d 1159, 1163 (9th Cir. 1996)…………………..20

*Universal Health Services, Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004)..39

*Vance v. Ball State Univ.*, 570 U.S. 421, 424, 133 S. Ct. 2434, 2439, 186 L. Ed. 2d 565 (2013)……………………………………………………………...……...43

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (9th Cir. 1999)…………31

*White v. Roper,*901 F.2d 1501, 1506 (9th Cir. 1990)…………………………..……38

*Wolak v. Spucci*, 217 F.3d 157, 160 (2d Cir. 2000)………………………..……..25

*Young v. Mercury Cas. Co.*, No. 2:12-cv-00091-RFB-GWF, at *8 (D. Nev. May 20, 2019)…………………………………………………………………..23

*Zetwick v. County. Of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017)………………...39

## JURISDICTIONAL STATEMENT

This Court has jurisdiction as a direct appeal of a final judgment in a civil proceeding following a jury trial. Notice of Appeal was filed on May 5, 2023 and an Amended Notice of Appeal was filed on May 7, 2023. 22-ER-6123-6129. Judgment was filed September 6, 2024. 1-ER 45. However, Notice of Appeal was timely following the resolution of tolling post-judgment motions. 1-ER-2-27.

## ISSUES PRESENTED

The four issues in this appeal raised by Appellants are as follows:

1. Whether Appellant's Motion(s) for a Mistrial Should Have Been Granted for Attorney Misconduct?

2. Whether the District Court's Order Denying Appellant's Post-Trial Motions, and in Ruling on Trial Objections, was Erroneous and Warrants Reversal?

3. Whether the Jury Verdict was Not Supported by the Evidence?

4. Whether the District Court Erred in Granting in Part Defendants' Motion for Summary Judgment (ECF 181)?

5. Whether Prejudicial Pretrial Rulings on Procedural Matters Warrant Reversal – Withdrawal of Counsel, Trial Timing, Discovery?

6. Whether the District Court's rulings, set forth in Minute Order 342, must be reversed as erroneous and abuse of discretion

7. Whether the Orders of Attorney's Fees, Costs Taxed, and Bill of Costs, should all be Vacated and Set Aside?

8. Whether the District Court's Ruling, set forth in Minute Order ECF 381, must be reversed for their erroneous denial of Plaintiff's Motion to Reconsider (ECF 350) and the Court's ruling as to each sides' peremptory challenges?

9. Whether the District Court's rulings, set forth in Minute Order 319, must be reversed as erroneous and an abuse of discretion?

10. Whether Golden Rule Arguments and Improper Statements During Closing Arguments Require Reversal Under Plain Error?

## STATEMENT OF THE CASE

On March 2, 2019, the Plaintiff's Complaint was filed. 21-ER-6085-6086 (ECF 1). The Plaintiff's Amended Complaint was then filed on May 24, 2019. (ECF 7). 21-ER-6028.

The Sbarro Defendants Answer to Amended Complaint was submitted on June 14, 2019. (ECF 11). 21-ER-5992. On August 9, 2019, Defendant Hernandez's Answer was filed. (ECF 25). 21-ER-5963. Defendant Ceballes' Answer followed on August 13, 2019. (ECF 28). 21-ER-5937.

1

### *Pretrial Motions*

A large number of pretrial matters came before the Court which are touched upon in this appeal. The Defendants' Motion to Compel Discovery and for Sanctions was filed on October 4, 2019. 21-ER-5924-5936 (ECF 67). Plaintiff's Response in Opposition to Defendant's Motion to Compel and for Sanctions came on October 18, 2019. 21-ER-5792-5923 (ECF 78). Lastly, the Defendant's Reply in Support of Motion to Compel Discovery and For Sanctions was lodged on October 21, 2019. (ECF 79). 21-ER-5788

On April 20, 2020, the Defendants Motion for Summary Judgment and Exhibits was filed, (ECF 148). 19-ER-5237. The Plaintiff's Opposition to Motion for Summary Judgment was then filed on June 12, 2020 (ECF 161). 88-ER-5188. The Declaration in Support of Plaintiff's Opposition to Motion for Summary Judgment and Exhibits came on June 13, 2020. (ECF 162). 18-ER-4954. On July 10, 2020, the Reply to Response to Defendants' Motion for Summary Judgment and Exhibits was filed. 17-ER-4822. Lastly, the Defendant's Joinder to Reply in Support of Motion for Summary Judgment was recorded on July 11, 2020. (ECF 165). 17-ER-4819. An Order Granting Summary Judgment (In Part) was filed on December 16, 2020. 1-ER-50-70.

Appellant filed numerous requests to reconsider or clarify the Court's ruling(s) on summary judgment throughout the proceeding. 3-ER-604-609; 14-ER-3783-3871,

for example. All requests for reconsideration or clarification were subsequently denied during the case below.

Additionally, Appellant made numerous attempts to obtain relief prior to trial, during trial, and post-trial, for spoliation of evidence. 17-ER-4711-4780; 16-4393; 583-603. Sbarro's Opposition to Plaintiff's Motion for Sanctions for Spoliation of Evidence and Exhibits was filed on February 24, 2022 (ECF 244). 17-ER-4588. Plaintiff's Motion for Sanctions against Sbarro Defendants for Spoliation of Evidence and Exhibits came on February 11, 2022 (ECF 235). 17-ER-4711. Ultimately all requests for a remedy in reference to spoliation of evidence were denied by the trial court. 1-ER-2-27. A Reply in Support of Plaintiff's Motion for Sanctions Against Sbarro for Spoliation of Evidence was lodged on March 7, 2022 (ECF 268). 16-ER-4393. Lastly, Sbarro's Opposition to Plaintiff's Motion for Sanctions for Spoliation of Evidence and Exhibits was filed on February 24, 2022 (ECF 244). 16-ER-4477.

### *Discovery Deadlines, Trial Setting(s), Withdrawal of Counsel*

The Court denied Appellant's request to extend discovery deadlines early in the litigation, prejudicing the remainder of the proceeding. 1-ER-78. On May 1, 2020, the Plaintiff's Objection to Magistrate Order Denying Motion to Continue Discovery Deadlines was submitted. (ECF 152). 19-ER-5220.

Plaintiff's Motion to Continue Trial (Second Request) was lodged on July 27, 2022 (ECF 331). 14-ER-3923. This Motion was ultimately erroneously denied by the

District Court, commensurate with its granting of Appellant's counsel's motion to withdraw, and denial of extension of discovery, all of which prejudiced Appellant.

Additionally, Appellant was prejudiced by numerous procedural pretrial matters. Appellant's counsel was permitted to withdraw in the midst of litigation. A Motion for Leave to Withdraw as Counsel and for Continuance was entered on March 1, 2022 (ECF 254). 16-ER-4419-4427; 1-ER-49. The Reply in Support of Motion to Withdraw as Co-Counsel and for Continuance was submitted on March 21, 2022. 16-ER-4387. Defendant Ceballes' Joinder to Opposition to Motion to Continue Trial was filed also on March 7, 2022 (ECF 267). 16-ER-4403. Defendant Sbarro's Opposition to Motion to Continue Trial was submitted on the same day, March 7, 2022 (ECF 266). 16-ER-4406. Despite these objections, including the objection of Appellant (under seal), withdrawal in the midst of litigation was ultimately accepted. 1-ER-49.

### *Motions in Limine and Regarding Evidence*

Appellant and the Defendants litigated numerous motions in limine. Of issue on appeal are Appellant's Motion(s) in Limine seeking to keep out "immigration file" evidence and other matters as irrelevant and overly prejudicial. 16-ER-4428-4476. Defendants' Opposition to Omnibus Motion in Limine and Exhibits was filed on April 11, 2022 (ECF 293). 16-ER-4288. Ultimately Appellant's motions in limine were largely denied. 1-ER-47-48.

Plaintiff's Omnibus Motion in Limine and Exhibits was lodged on February 28, 2022 (ECF 251). 16-ER-4428. Plaintiff's Motion for Reconsideration of the Court's Order Granting Motion in Limine #7 to Exclude All Reference to Life Care Expert Lora K. White was filed on July 25, 2022. 10-ER-3988.

On the same day, Plaintiff's Response to Motion in Limine to Exclude Damages was also filed (ECF 327).15-ER-4004. Ceballes's Renewed Motion in Limine to Exclude Plaintiff's Damages was lodged on July 19, 2022 (ECF 323). 15-ER-4099. A Reporter's Transcript from the Motion Hearing was recorded on July 14, 2022. 16-ER-4117. Plaintiff's Reply to Defendants' Omnibus Motion in Limine was filed on April 18, 2022 (ECF 300).15-ER-4182. Lastly, Defendants' Opposition to Omnibus Motion in Limine and Exhibits was submitted on April 11, 2022 (ECF 293). 15-ER-4202.

Another issue during pretrial litigation was the refusal to permit Plaintiff to replace their deceased expert witness with another live witness. Plaintiff's Emergency Motion to Substitute the Report and Testimony of Dr. Norton Roitman with a Living Expert was submitted on July 22, 2022 (ECF 325). 15-ER-4038. Defendants' Motion to Exclude Dr. Roitman's Reports and Exhibits was filed on August 10, 2022 (ECF 352). 14-ER-3688. Sbarro's Opposition to Emergency Motion to Substitute the Report and Testimony of Dr. Norton Roitman (Deceased) with a Living Expert and Exhibits was also filed on July 29, 2022 (ECF 334). 14-ER-3895. Plaintiff's Reply to

Defendant's Opposition to Emergency Motion to Substitute Report and Testimony of Dr. Roitman with a Living Expert was filed on August 2, 2022 (ECF 340). 56 -ER-3774.

### *Trial and Judgment*

Trial ultimately proceeded with Day 1 occurring on August 22, 2022. 4-ER-741. Day 2 took place on August 23, 2022. 4-ER-950. Day 3 took place on August 24, 2022. 5-ER-1167. Day 4 began on August 25, 2022. 6-ER-1409. Day 5 of trial occurred on August 265, 2022. 7-ER-1662. Day 6 of trial took place on August 29, 2022. 8-ER-1937. Day 7 of trial took place on August 30, 2022. 9-ER-2253. Day 8 of trial went forward on August 31, 2022. 10-ER-2488. Day 9 of trial took place on September 1, 2022. 11-ER-2900. Day 10 of trial, the concluding day of trial, took place on September 2, 2024. 12-ER-3240.

The Judgment in a Civil Case (ECF 424) was entered on September 6, 2022. 1-ER-45. This followed the jury verdict. 4-ER-688-689.

A Bill of Costs (ECF 458) was filed on December 12, 2022 (1-ER-28), and another Bill of Costs (ECF 457) was documented on the same day (1-ER-29). Additional Bills of Costs were registered on September 15, 2022 (ECF 429, 1-ER-30-31) and (3-ECF 428, 1-ER-32-44).

### *Post-Judgment Litigation*

After Judgment was entered, Appellant filed numerous post-judgment motions which each warranted relief which was ultimately denied. 1-ER-2-27. Appellant filed a Motion for Reconsideration and Clarification regarding the earlier grant of summary judgment. 3-ECF 434, 3-ER-604-609. Appellant filed a Motion for New Trial Under 59(A). 3-ER-583-603. Appellant also filed a Rule 50 Motion for Judgment as a Matter of Law. ECF 436, 3-ER-573-582. Appellant then filed a Motion for Dispositive Sanctions, Relief Under Rule 50, Relief Under Rule 59, Relief Under Rule 60, and Relief from Judgment. 3-ECF 437-440; 3-ER-441-571.

Ultimately the District Court denied these requests for post-judgment relief via an Order entered on April 6, 2024. 1-ER-2-27.

Notice of Appeal was filed on May 5, 2023 and an Amended Notice of Appeal was filed on May 7, 2023. 22-ER-6123-6129. Judgment was filed September 6, 2024. 1-ER-45. However, Notice of Appeal was timely following the resolution of tolling post-judgment motions. 1-ER-2-27.

Additional orders challenged in the present appeal include a series of Minute Orders were issued: on August 16, 2922 (ECF 381, 1-ER-46), on August 3, 2022 (ECF 342, 1-ER-47), on July 14, 2022 (ECF 319, 1-ER-48), and on March 22, 2022 (ECF 283, 1-ER-49). The court provided an Order Granting in Part Defendants' Motion for

Summary Judgment on December 16, 2020 (ECF 181, 1-ER-50-70). The cumulative effect of these orders were to fundamentally deprive Appellant of a fair trial.

## STATEMENT OF FACTS

Sandra Meza-Perez, who began her employment at Sbarro Pizza inside the Las Vegas Convention Center on April 13, 2016, was subjected to various sexual offenses and consequent causes of action during the term of her employment. The General Manager, Ceballes, who hired and supervised her, abused his position by demanding sexual favors in return for employment, under the threat that failure to comply would result in harm to Sandra or her family members. Sandra and her family members, all hired by Ceballes, faced a hostile work environment characterized by sexual harassment, assault, and rape, leading to Sandra's constructive discharge in May 2017.

Ceballes exploited Sandra's status as an undocumented immigrant and her need for employment, subjecting her to repeated sexual assaults, including rape, often using threats of deportation and harm to her family as leverage. These assaults occurred frequently, sometimes in the presence of or with the complicity of other employees. Sandra's work environment was also marked by unsafe and unsanitary conditions, including being forced to work without breaks or adequate hydration, leading to hospitalization for dehydration.

After Sandra reported concerns to HR, including theft by Ceballes and others, the response was inadequate, with no serious investigation into her allegations. This

lack of action and continued threats from Ceballes exacerbated Sandra's situation, culminating in her decision to leave the job. The actions (or non-actions) of the Defendants created a pattern of abuse, exploitation, and retaliation, underscoring the severe impact of workplace sexual harassment and assault on Appellant. Sbarro Pizza, by extension of its managerial and employee representation through Ceballes, Hernandez, and Alatorre, should have been held vicariously liable for their actions under the doctrine of respondeat superior and relevant Nevada statutes.

## SUMMARY OF THE ARGUMENT

In this Appeal, Plaintiff Sandra M. Meza-Perez argues numerous rulings during the proceedings below, rulings made prior to trial, rulings made during trial, and rulings made in response to post-judgment motions, as follows:

The District Court erred when it denied Appellant's oral motion for a mistrial and her subsequent written Motion for a New Trial, requiring reversal.

Second, the District Court's Order entered on April 7, 2023 [ECF No. 459] that denied Plaintiff's post-trial motions [ECF Nos. 433-440], was erroneous and an abuse of discretion, and the District Court abused its discretion when ruling on evidence during trial, warranting reversal. 1-ER-2-27.

Third, the jury verdict entered on September 2, 2022 [ECF No. 420], and the Judgment entered on September 6, 2022 [ECF No. 424] was erroneous and not supported by the evidence, requiring reversal. 3-ER-676; 4-ER-688-689; 1-ER-45.

Additionally, the Costs Taxed [ECF Nos. 457 and 458] stemming from the Bill of Costs filed by Defendant Zachary Ceballes [ECF No. 428] and the Bill of Costs filed by Defendant Sbarro [ECF No. 429] should be reversed and set aside commensurate with an Order overturning the verdict and judgment as indicated herein. 1-ER-29; 1-ER-32-44; 1-ER-30-31.

Additionally, the District Court's Ruling, set forth in Minute Order ECF 381, must be reversed for their erroneous denial of Plaintiff's motions and erroneous ruling on the issue of peremptory challenges. 1-ER-46.

Likewise, the District Court's rulings, set forth in Minute Order 342, must be reversed as erroneous and abuse of discretion. The District Court's rulings, set forth in Minute Order 319, must be reversed as erroneous and an abuse of discretion.

The proceeding was prejudiced from the very beginning by the District Court's erroneous handling of summary judgment issues. District Court's order granting in part of Defendants' Motion for Summary Judgement [ECF No. 181], and related denials of Motions for Clarification and to Reconsider, was Erroneous and an Abuse of Discretion. 1-ER-50-70.

As set forth herein, the District Court erred when ruling on pretrial procedural matters, including the withdrawal of Appellant's former counsel, refusing to extend discovery early in the litigation, and denying Appellant's second motion to continue trial.

## **LEGAL ARGUMENT**

### **1.**    **Appellant's Motion(s) for a Mistrial Should Have Been Granted for Attorney Misconduct.**

#### **a.**    **Standard of Review.**

This Court generally reviews a district court's denial of a motion for mistrial for an abuse of discretion. *United States v. Segal*, 852 F.2d 1152, 1155 (9th Cir. 1988). However, where such incidents rise to the level of denial of a fair trial, constitutional concerns warrant providing de novo review.

#### **b.**    **Requests and Rulings.**

Appellant, in the proceedings below, moved twice for mistrial before the District Court. First, Appellant moved for mistrial via an oral motion on August 23, 2022. 5-ER-1081-1091. Appellant cited several grounds in this initial motion for a mistrial: first, that counsel inappropriately instructed the jurors to write things down, when it is only the Court's role to instruct the jurors. Second, that counsel for the defendants offered an incorrect legal standard as an argumentative opening statement. Third, counsel for the defendants accused Appellant's counsel Sull of, essentially, a series of criminal acts, including fraud upon immigration courts, which permanently prejudiced the proceedings. *Id*.

The motion was denied without prejudice and a written Motion for a Mistrial was subsequently filed on August 24, 2022. 3-ECF 392. The Court again denied all motions for mistrial at the close of trial, and in response to post-judgment motion(s)

filed by the Appellant. 3-ER-459; 3-ER-583-603 (motion regarding mistrial within context of motion for a new trial).

### c.     Denial of Mistrial Warrants Reversal.

"To warrant reversal on grounds of attorney misconduct, the flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (quotation omitted). Factors to consider include the frequency and timing of the misconduct, whether the party seeking a mistrial objected, whether the jury awarded outsized damages, and whether the district court gave a limiting instruction. *See id.* at 1285-86.

On August 24,2022, at the outset of trial, the Jury was instructed that the Appellant's ulterior motive of filing the lawsuit was to get papers and defraud the Federal government which is a felony. The Jury was also instructed by counsel for the Defendants that co-counsel, Hardeep Sull assisted in this interior motive and committed immigration fraud, a felony.

Sbarro's Counsel repeatedly attacked with impunity the integrity of opposing counsel, which cumulatively necessitated a mistrial. *Bufford v.Rowan Cos*., 994 F. 2d 155, 157 (5th Cir. 1993); *Fireman v. Armstrong World Indus*., 980 F.2d 171, 209 (3d Cir. 1992)("vituperative references to opposing  counsel will not to be tolerated"); *Keht v. Smith Barney, Harris Upham &Co.*, 736 F. 2d 1283, 1285-1286 (9th Cir. 1984)

(Unsubstantiated accusations that opposing counsel tampered with evidence are grounds for mistrial).

That, and more, is exactly what Defendant's counsel did in its opening argument, irreversibly tainting the jury with allegations of "gaming the Immigration System" and open accusations of Plaintiff's counsel and Plaintiff lying to the Immigration Court and to the District Court.

At the Opening Arguments in this case on August 23, 2022, Defendants counsel made several statements accusing Ms. Sull of fraudulently colluding with Ms. Meza Perez to lie to the Immigration Court, in essence branding counsel for Appellant a rampant criminal at the outset of the trial, forever poisoning the well against Appellant for the remainder of the proceeding. Defendant's counsel, Mr. Hicks, made the following accusations of criminal conduct (Fraud, Conspiracy) against both Ms. Sull and Plaintiff:

(1) Plaintiff and her immigration attorney had a motive and a willingness to fan the allegations against Sbarro and Dana *in order to game the immigration system 5-ER*-1052.

(2) Plaintiff's attorney had a "willingness to manufacture allegations" to game the immigration system. *Id*.

(3) In opening argument, a major theme of Defendant Sbarro's opening argument, which was presented to the

jury, was that "plaintiff's *immigration attorney led the charge"* with Plaintiff to further the ulterior motive of filing this lawsuit to get immigration papers and defraud the federal government which is a felony. 5-ER-1052-1053; *See also* 8 U.S.C. 1325; 18 U.S.C 1546; 28 U.S.C 1746, etc.

(4) During the trial and throughout Defendants opening arguments, the concept of the defense was that *Appellant's attorney at trial, Sull,* was a fraudster in an effort to prejudice that jury against Appellant herself: "Plaintiff and her legal team accused dana…" … "plaintiff and her immigration attorney had a compelling motive and willingness to manufacture allegations against Sbarro in order to game the immigration system" and "Here, plaintiff's immigration attorney led the charge against Sbarro…" and "plaintiff and her immigration attorney were throwing every possible argument against the wall to see what sticks in order to gain her immigration papers…" and "Plaintiff and her attorneys tried to bully and intimidate Dana and Sbarro…" 5-ER-1050-1055.

The Jury was told, over and over, that Ms. Sull assisted, "led the charge", 'game[d] the Immigration System" in this fraud on the Immigration court, because she had the same ulterior motive. 5-ER-1052-1053. Perpetrating a fraud on the Immigration Court (or any Court, for that matter) is a felony. Defendants accused Ms. Sull, and Plaintiff of committing a felony. *Id; See also* 8 U.S.C. 1325; 18 U.S.C 1546; 28 U.S.C 1746, etc.

Further, Defendant's statements in opening argument fatally compromised Plaintiff's right to a fair and legitimate trial. Defendants represented to the District Court that they did not intend to make Ms. Sull a witness in this matter, however, in telling the jury, in the larger context that Ms. Sull and Plaintiff perpetrated a fraud on the Immigration Court, that "It's now 100 percent clear, and Plaintiff and her lawyers will admit it at some point" admit lying. 5-ER-1050. Defendant's counsel unequivocally told the jury that Ms. Sull, or Ms. Foley, will be making admissions regarding fraudulent behavior before the Immigration Court. *Id*. This was an immediate act of extreme prejudice which now requires reversal.

The Court was obligated to declare a mistrial in this matter because Plaintiff's right to a fair and legitimate trial had been fatally compromised by the criminal accusations against trial counsel. "While attorneys are given broad latitude in closing arguments, remarks must be confined to the evidence and to the issues and inferences that can be drawn from the evidence. Arguments that fall squarely within the category

15

of fundamental error require no preservation below, where the basic right to a fair and legitimate trial has been fatally compromised. *SDG Dadeland Assoc v. Anthony*, 979 So. 2d 997, 2008 Fla. App. LEXIS 1876 (8008).

"A new trial is warranted on the ground of attorney misconduct during the trial where the "'flavor of misconduct . . . sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict."'" *Anheuser-Busch, Inc.,* 69 F.3d at 346 (quoting *Kehr v. Smith Barney, Harris Upham & Co.,* 736 F.2d 1283, 1286 (9th Cir. 1984) (quoting *Standard Oil Co. of Cal. v. Perkins,* 347 F.2d 379, 388 (9th Cir. 1965))). If the misconduct permeates the proceeding, the jury is "'necessarily prejudiced.'" *Id.* (quoting *Kehr,* 736 F.2d at 1286).

Ultimately, the District Court ruled as follows when the matter of mistrial was raised in Appellant's post-judgment motion(s):

> "Considering the ten-day trial as a whole, defense counsel's improper comments in opening did not so permeate the trial as to conclude the jury was influenced by passion and prejudice in reaching its verdict. The improper comments were made only in the opening statement. Although Sull was mentioned at points in the trial, the assertion that Sull engaged in immigration fraud was never repeated. The jury found against Meza-Perez but there was ample other evidence for the jury to base their decision on besides the references to Sull. And I twice offered to give an instruction to the jury, but Meza-Perez declined. I therefore deny this portion of her motion." *Meza-Perez v. Sbarro LLC,* 2:19-cv-00373-APG-EJY, at *11-13 (D. Nev. Apr. 6, 2023).

16

This holding cannot be accepted and ratified by this Court, unless a gross injustice is to be ratified. A mistrial should have been granted by the Honorable Judge Gordan at the time it was initially raised following opening arguments, at the close of trial, and via Appellant's post-judgment motion. Sbarros repeatedly and deliberately misled and tainted Ms. Sull to the point that even the Honorable Judge Gordan had to caution Defendant's Counsels, Mr. Patrick Hicks and Mr. Chapin. However, they continued with the smear campaign against Ms. Sull by referring to her as "plaintiff's counsel" throughout trial.

### District Court Failed to Account for Micro/Macro-Aggressions against Counsel which Denied a Fair Trial

Ms. Sull is a visible minority and with the current politics in the country towards immigrants, the continuous demeaning of her character was an uphill battle with a jury.The reality was at that moment they knew that the microaggressions that they used against two women of color and use of the dirty immigration political card would lead to distrust of Plaintiff's Counsel. Once this was achieved, it did not matter what would come from either of Plaintiff's counselors because it would be scrutinized with the microaggressions and misinformation that was provided by Defendant's counsellors. *See* Declaration of Counsel (attached to Appellant's Motion to Supplement the Record)

The ongoing character assassination against Ms. Sull was inflammatory and defamatory. She was a marked woman. *Microaggressions are subtle, often*

17

*unintentional, discriminatory remarks or behaviors that negatively target marginalized or minority groups. These can include comments, actions, or environmental cues that convey hostility, derogatory attitudes, or insults towards these groups.*

Judge Gordan failed to account for the implications of how immigration fraud would taint a jury, post Trump and even now. This was exacerbated with the use of U and T visas that were misleading since the theme never escaped the jury's mind. These were not factually correct statements by Sbarro but an actual defamatory *campaign against Ms. Sull in order to prejudice her client, the Appellant.* Beginning with Opening Statements, defendant's counsel accused Appellant's counsel of a smear campaign with no facts to corroborate.

Counsel for Defendants accused Appellant's counsel of filing fraudulent documents in immigration court and concocting a plan to make false rape accusations. In fact, the defendants admitted that these sexual events occurred (after long denying them), leaving only issues of consent and coercion (amongst Plaintiff's specific causes of action) to be further determined.

Sbarro's opening arguments, set forth in this intentionally inflammatory and prejudicial manner, did not contain factually correct assertions that were supported by evidence at trial. The idea of a curative instruction would only exasperate already a 10-day trial where the jury disliked attorney Sull from opening statement because

she had been identified by opposing counsel as a criminal and a person who defrauds the court. No curative instruction would suffice to prevent the taint of inflammatory prejudice from infecting the jury's ability to impartially weigh both sides of the case and the evidence presented.

The misconduct here during opening argument is sufficient to require reversal is there is no possible way to "unring the bell" of accusing counsel for Appellant of being a fraudulent criminal. The criminal accusations against counsel went to the heart of the case, and ensured the jury would never enter a verdict for a Plaintiff represented by an attorney who, according to the defendants counsel, had previously engaged in a conspiracy to defraud the courts. Reversal and remand is required.

**2.** **The District Court's Order Denying Appellant's Post-Trial Motions, and in Ruling on Trial Objections, was Erroneous and Warrants Reversal.**

      a. **Appellant's Motions and Court's Order.**

Appellant filed numerous post-trial motions, all of which were erroneously denied by the District Court. *See* ECF 434-440.

Appellant moved for reconsideration of the District Court's earlier grant of partial summary judgment, arguing that the evidence at trial mandated reinstating those claims. (ECF 434).

Appellant moved for a new trial pursuant to FRCP 59(a). Specifically, moved for a new trial based upon erroneous evidentiary rulings, the verdict being against the weight of the evidence, fundamental unfairness, and a miscarriage of justice.

Appellant made a Renewed Motion for Judgment as a Matter of Law. (ECF 436). Therein Appellant argued that she was entitled to judgment as a matter of law for constructive discharge against Sbarro and for her tort claims against Sbarro. *Id*.

Appellant moved for dispositive sanctions based on spoliation of evidence, relief from judgment, for a new trial, and for relief from judgment under FRCP 50, 59, and 60. ECF 437-440.

The Court denied each of these Motions via an Order filed April 6, 2023. 1-ER-2-27. The issues addressed in the motion and order also include the Court's erroneous rulings on objections to evidence presented during the course of trial, and as such, those issues are likewise addressed in this section.

> **B.** **Court's Erroneous Order ECF 459, and Ruling on Objections During Trial, Requires Reversal.**

### *Rule 60 Reconsideration*

This Court will review for an abuse of discretion the district court's denial of a Rule 60(b) motion. A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact .*See United States v. Washington,*98 F.3d 1159, 1163 (9th Cir. 1996).*Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223 (9th Cir. 2000)

FRCP 60 provides in relevant part that "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record" for: "(1) mistake, inadvertence, surprise, or excusable neglect;… (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;… (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."

A motion for reconsideration should not be granted unless the Court: (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. AC and S, Inc.,* 5 F3d. 1255, 1263 (9th Cir. 1993)

Here, Appellant rightfully requested, multiple times during the proceeding including in this post-judgment motion, for the District Court to correct its erroneous rulings relating to summary judgment.

The evidence at trial demonstrated that Sbarro's managers and supervisors were not properly trained and Ceballes was negligently retained until the end of 2017. This evidence clearly showed that Sbarro was deficient in training its in-store employees and Human Resources department; that Sbarro continued to retain their employees,

i.e., Ceballes, despite Plaintiff's grievous allegations; and that there was an egregious lack of supervision by Sbarro over its employees who fostered an environment that allowed Plaintiff to be sexually assaulted and then compounded that error in how it handled its response.

Aside from the merits of Plaintiff's claim, importantly, Plaintiff also showed at trial that her Negligent Hiring, Supervision, and Retention claims did not accrue until at least May 7, 2017, not December 2017 as the District Court previously determined. As such, Plaintiff's Negligent Hiring, Supervision, and Retention claims were timely plead and the District Court was required, in response to Appellant's post-judgment motion, to reconsider its prior ruling dismissing those claims under FRCP 60.

Each of these facts, supported by the testimonial evidence, was made clear during the course of trial, again indicating the grossly erroneous manner of the Court's partial grants of summary judgment during pretrial litigation. 1-ER-50-70. The Court should have granted the Rule 60 post-judgment motion relating to these issues, but failed to do so. 1-ER-2-27.

### *Rule 59 New Trial – ECF 535*

Pursuant to Rule 59, a court, on motion, may grant a new trial on all or some of the issues to any party after a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED.R.CIV.P. 59(a)(1)(A). A court may grant a motion for a new trial based on grounds that have

been historically recognized. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving. *Id.*, quoted in *Charyulu v. California Cas. Indem. Exch.*, 2:08-cv-1199-RCJ-RJJ, at *10-11 (D. Nev. July 5, 2011). See also *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (grounds on which a new trial may be granted: "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.").

"Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." … In [so] ruling, a district court may "weigh the evidence and assess the credibility of witnesses[.]"… "The district court is "not required to draw all inferences in favor of the verdict and [can] reweigh the evidence and make credibility determinations." *Young v. Mercury Cas. Co.*, No. 2:12-cv-00091-RFB-GWF, at *8 (D. Nev. May 20, 2019) (quoting *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842, 845 (9th Cir. 2014), and *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010)).

To obtain a new trial based on erroneous evidentiary rulings, the moving party must show that the rulings were both erroneous and substantially prejudicial."

*Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995), quoted in

*Mathis v. Cnty. Of Lyon*, No. 2:07-cv-00628-APG-GWF, at *3 (D. Nev. Sep. 9, 2016).

Here, Appellant established grounds for a new trial in her post-judgment motions. These motions, as set forth herein, were erroneously denied by the District Court via an abuse of discretion, requiring reversal and remand. 1-ER-2-27.

### *Improper Evidentiary Rulings*

Appellant made numerous evidentiary objections during the course of trial, re-raised in her post-judgment motions, which were erroneously handled by the District Court. The post-judgment motion identifying these issues should have been granted, and the identification of these preserved-errors during the course of trial now supports reversal and remand for a new trial.

Additionally, the judgment was shown to be contrary to the weight of the evidence, fundamental unfair to Plaintiff, and a miscarriage of justice based on Defendants' counsels' actions at trial and thus, a new trial was required, and was erroneously denied by the District Court. 1-ER-2-27.

### *The Trial Court erred by failing to uphold Rule 412's requirements.*

During trial, Plaintiff moved to preclude Defense counsel from eliciting any testimony or evidence regarding Plaintiff's sexual history. Plaintiff correctly noted that Defense counsel had failed to comply with Federal Rule of Evidence 412 by providing notice of the intent to introduce such evidence. The District Court took the

issue under advisement and allowed Plaintiff to renew the objection based on specific testimony.

Plaintiff objected on Rule 412 grounds twice: once in relation to a question about Plaintiff's relationship with her ex-boyfriend and her ex-husband and renewed the objection moments later when a question was posed about Plaintiff's sexual practices.

The District Court overruled the objection, finding that the issues were "inexorably intertwined" with the questions at stake in the litigation. *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 203 (2d Cir. 2014). The District Court also concluded that Plaintiff had previously "opened the door" to these questions. Finally, the District Court concluded that the probative value outweighed the prejudicial effective.

Rule 412 "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with [the] public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." FED.R.EVID. 412, advisory committee's note (1994 Amendments). A party seeking to admit evidence of past sexual behavior or alleged sexual predisposition bears the burden of demonstrating that the probative value of this evidence substantially outweighs the danger of harm and unfair prejudice. FED.R.EVID. 412(b)(2).

As preliminary matters, no party can dispute that Rule 412 applies to allegations of workplace sexual harassment. See, e.g,. *Wolak v. Spucci*, 217 F.3d 157, 160 (2d Cir. 2000) ("Rule 412, which explicitly includes civil cases involving sexual misconduct, encompasses sexual harassment lawsuits."). Furthermore, no party can dispute that Defendants complied with the procedural obligations of the Rule. "A court, "[b]efore admitting evidence . . . must conduct a hearing in camera and afford the victim and parties a right to attend and be heard.'" *Wolak*, 217 F.3d at 160 (citing what is now Rule 412(d)(2)). See also *Dunegan v. City of Council Grove, KS*, 189 F.R.D. 649, 652 (D. Kan. 1999) ("Rule 412, unlike most of the other rules of evidence, requires some affirmative action by the court prior to the introduction of evidence that falls within its limits ... .") (emphasis added).

No such motion – and no such in camera hearing – were ever filed or held in this case below. 22-ER-6130-6176 (case docket). Instead, Defendants sought the admission of the presumptively inadmissible information through a combination of waiver, invited error, and a lack of unfair prejudice under Rule 403.

Regarding the notion that Plaintiff had "opened the door" to these presumptively impermissible questions by Defendants, the Rule permits a court to "admit evidence of a victim's reputation only if the victim has placed it in controversy." FED.R.EVID. 412(b)(2). In this case, Plaintiff did not put her

"reputation" at issue – she did not claim she was chaste or would never engage in sexual activity, in an attempt to use Rule 412 as both "a shield and a sword."

Instead, the District Court erroneously considered Plaintiff's discussion on the sexual abuse of her sexual abuse and her children's sexual abuse at the hands of Plaintiff's ex-husband to be "opening the door" to questions about her sexual reputation that should be presumptively inadmissible under Rule 412.

Given the stated purpose of the Rule to protect victims from further trauma and embarrassment, a plaintiff should not be found to have "opened the door" to questions about her sexual history and practices simply by bravely admitting that she has been sexually abused before. Cf. *S.M. v. J.K*, 262 F.3d 914, 920 (9th Cir. 2001) (holding that plaintiff had not "opened the door" to question of an extramarital affair in case alleging that sexual assault by former employer had exacerbated PTSD stemming from childhood sexual abuse – only questions regarding the past abuse were appropriate on rebuttal).

Given that "the Rule 412 test puts 'harm to the victim' on the scale in addition to prejudice to the parties." *A.W. v. I.B. Corp.*, 224 F.R.D. 20, 24 (D. Me. 2004) (quoting Fed.R.Evid. 412 Advisory Committee notes to 1994 amendments (emphasis in original)), and that Rule 412(b)(2) "revers[es] the usual presumption of admissibility set forth in FED.R.EVID. 403," *Rhodes v. Motion Indus., Inc.*, No. 1:07-CV-251, at *6 (E.D. Tenn. Oct. 17, 2008), the trial court here should have precluded

these questions, due to Defendants' failure to comply with Rule 412 and move for the admission of these questions pre-trial in camera. Plaintiff's discussion of her past abuse and her children's abuse could not have "opened the door" to questions about how she flirts and what her sexual practices are. This is nothing other than "blaming the victim" and opening the door to sexual history evidence any time a victim testifies that they have been sexually assaulted, the exact outcome Rule 412 is designed to prevent.

Plaintiff was clearly prejudiced by the admission of this evidence, because whether Plaintiff had been sexually harassed and abused by her work supervisor was the central issue of this case. In fact, nothing can be said to be more inflammatory and prejudicial than the evidence Rule 412 was designed to protect victims against. The improper admission of this evidence over objection, and the later denial of the post-judgment motion raising these issues, now requires reversal. 1-ER-2-27.

### *The Trial Court Erred by Admitting Immigration File Evidence, an Audio Recording of Plaintiff's Counsel, and an Improper Reference to Criminal "Justice Court"*

On or about February 28, 2022, Plaintiff filed her Motion in Limine, Omnibus (ECF 250). The Motions in Limine included Motion in Limine #3 which asked the Court to exclude all reference, evidence, and/or testimony regarding Plaintiff's immigration file and Motion in Limine #1 which asked the Court to exclude reference

to Plaintiff's Post-Employment Arrest and Detention Related to Plaintiff's Immigration Status.

As to Motion in Limine #3, Plaintiff argued that absent a showing of relevance that Plaintiff's immigration files and application for adjustment of status were based on her employment at Defendant Sbarro, all references, evidence, and/or testimony pertaining to Plaintiff's immigration file should be excluded. Defendants used the immigration issue to accuse Plaintiff of lying to the Immigration Court, the accusation of such is an accusation of a criminal conviction. See, e.g., 18 U.S.C. §§ 1001, 1015(a).

However, as there was never a charge filed against Plaintiff for this, let alone a conviction. Defendant's presentation of evidence of supposed lies regarding immigration violated Fed. R. Evid. 609. The trial court should not have allowed Defendants to impeach Plaintiff's character for truthfulness using extrinsic evidence of a criminal act that has not been charged or convicted or even investigated. See also *United States v. Marsh*, 451 F.2d 219, 220 (9th Cir. 1971) (impeachment on collateral matters

At trial, on Day 8 in the afternoon Defendants purported to play a portion of what was represented to be a hearing in immigration court in front of Judge McDermott. 10-ER-2700-2727. The use of the recording, which was permitted to be played was fundamentally unfair to Plaintiff as the recording was improperly

obtained, was unduly prejudicial and the recording had never been produced previous to the trial. In fact, Plaintiff requests an evidentiary hearing to determine how Defendants obtained the recording as Plaintiff believes it was obtained by improper means.

The Court further indicated that it believed the recording was from Justice Court, when in fact, it was from immigration court. 10-ER-2769. Justice Courts are most commonly associated with their rule of handling criminal proceedings, which was the likely implication in this context where Defendants repeatedly alleged crimes including fraud. Defendants failure to correct the Court's misapprehension likely led to the error in permitting the recording to be played. *Id.* Further, Mr. Hicks was permitted to testify that it was Ms. Sull's voice on the recording, when in fact, the recording had never been authenticated, nor produced. *Id*.

Given the overarching issues regarding Plaintiff's immigration status, and the context of the trial, the admission of the recording and Defendants counsel's testimony regarding the authentication of the recording, Defense counsel's failure to correct the Court's misapprehension that this recording was from Justice Court criminal proceedings, instead of a closed immigration hearing, created a fundamentally unfair trial process which now requires reversal.

### Errors Regarding Spoliation During Trial and Denial of Post-Judgment Motion Regarding Spoliation

Prior to and during trial, Plaintiff moved for instructions on spoliation of evidence. Plaintiff asked for a negative-inference instruction and presumption regarding the evidence that was destroyed – specifically, "the cooler, the cooler door, the latch, photographs, the surveillance video footage, the hard drive that wasn't preserved."

when the lease was terminated and the Sbarro's restaurant was demolished.

Plaintiff alleged that Defendant Sbarro had affirmatively misrepresented that Sbarro had no control over the property and misrepresented whether the camera was functional. Plaintiff further contended that this evidence was necessary to Plaintiff to demonstrate how the sexual assault at issue in this case and other sexual assaults in the restaurant could have occurred with notice by others. Additionally, given that the camera was in fact operational, the camera might have captured some of these other events if the recordings had been preserved. The trial court ultimately denied the requested instruction.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (9th Cir. 1999). There are two sources of authority under which the Court can sanction a party for spoliation of evidence—its inherent authority or Federal Rule of Civil Procedure 37. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Regardless whether under

Rule 37 or its inherent authority, a federal court applies federal law when addressing issues of spoliation of evidence. See *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

"A finding of bad faith is not a prerequisite for an adverse inference. … A spoliation remedy, however, requires some degree of culpability." *Hernandez v. Vanveen*, No. 2:14-cv-01493-JCM-CWH, at *2 (D. Nev. Mar. 28, 2016) (citing *Glover*, 6 F.3d at 1329, and *In re Napster*, 462 F. Supp. 2d at 1067).

Reversal and remand were required. The District Court's repeated refusal to grant relief regarding spoliation prejudiced Appellant (1-ER-27). Not only was Plaintiff unable to prove her allegations due to the destruction of this evidence, Defendants were free to argue what the cooler was like (i.e., whether it had a lock that locked from the inside) and whether the camera was operational, without affording Plaintiff the ability to refute that evidence. Furthermore, Plaintiff presented evidence that Defendant Sbarro had more control over the ability to preserve evidence than had been previously suggested by some of their witnesses, which provides "some degree of culpability." *Hernandez*, *id.* at *2.

The prejudice for failing to grant relief due to spoliation is evident. Vast amounts of the closing arguments of both counsel for the various defendants focused on a lack of proof that the walk-in cooler was being locked. 12-ER-3311; 12-3326; 12-3332-3333; 12-3355; 12-3356. This was, perhaps, the most frequently mentioned

topic during defense closing arguments: the claim that the evidence showed that the walk-in cooler *could not be locked* from the inside. *Id.*

It is a miscarriage of justice that the Sbarro defendants were able to cause the unavailability of evidence relating to the cooler, in violation of discovery and duties to preserve, but then rely on the absence of that evidence to win their case against Plaintiff. Reversal and remand is required to correct the trial court's abuse of discretion and refusal to take action regarding these issues.

### Defendants Violated Order Re: Motion in Limine #5 During Trial Warranting Reversal

Part of Plaintiff's omnibus motion in limine [ECF #251 (MIL #5)] requested an order precluding Defense counsel from mentioning the sanctions imposed against Plaintiff's prior counsel in this case. 16-ER-4428-4476. The Trial Court granted that motion in limine. 1-ER-48.

Although not mentioning the sanctions specifically, Defense counsel achieved the same effect by pointing out Ms. Hill and Ms. Sull in court as often as possible throughout trial in a denigrating and accusatory manner.

Additionally, during opening argument, Defense counsel suggested that Ms. Sull would be testifying about Plaintiff's visa application. Plaintiff moved for mistrial based on this misconduct, which was erroneously denied.

A new trial is warranted on the ground of attorney misconduct during the trial when the "'flavor of misconduct . . . sufficiently permeate[s] an entire proceeding to

33

provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (quoting *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965))). If the misconduct permeates the proceeding, the jury is "necessarily prejudiced." *Kehr,* 736 F.2d at 1286.

The fact that Defense counsel mentioned Plaintiff's counsel in both the opening and the closing (by allusion to the news stories) shows that Defendant's violation of the limine order permeated the trial. Indeed, Defense counsel made immigration fraud their "first defense" in the case, continuing the attack on Plaintiff's counsel, despite the fact that Plaintiff is entitled to rely on the advice of her attorney.

Plaintiff raised these violations to the court through the motion to mistrial and objections. Additionally, Plaintiff anticipated this problem pre-trial, as evidenced by the motion in limine. To the extent that Plaintiff failed to make a specific objection during closing argument, courts have not found the lack of an objection a barrier to correct misconduct. See *McWhorter v. City of Birmingham*, 906 F.2d 674, 677-78 (11th Cir. 1990) ("the trial judge focused on the improper argument despite the lack of an objection, and his grant of a new trial served to vindicate the authority of the court.").3

Given Defendants' repeated failures to comply with the court's pre-trial exclusion, the misconduct permeated the trial, and a new trial should be ordered.

### **The Court Prejudiced Appellant with Unreasonable Trial Management Orders**

Finally, the District Court abused its discretion in the management of the trial with respect to timing and the order of witnesses.

Prior to trial, the District Court asked the parties for an estimate on the trial length; all parties agreed that 10-12 days would be required. However, during trial, the District Court insisted that the trial be completed in only 10 days.

Plaintiff recognizes that "Rule 611 permits the court to 'exercise reasonable control over the mode and order of examining witnesses and presenting evidence' to effectuate certain goals, including 'procedures for effective determination of truth.'" *Jaynes Corp. v. Am. Safety Indem. Co.*, No. 2:10-cv-00764-MMD-GWF, at *8-9 (D. Nev. Mar. 20, 2014) (quoting FED. R. EVID. 611(a)). Nonetheless, in exercising this discretion, a court must not prejudice Plaintiff's right to a fair trial. See, e.g., *Elgabri v. Lekas*, 964 F.2d 1255, 1260 (1st Cir. 1992) ("We do not disturb decisions regarding courtroom management unless these decisions amount to an abuse of discretion that prejudices appellant's case."). "The order in which to call witnesses is a fundamental aspect of trial strategy ...." *Davie v. Mitchell*, 291 F.Supp.2d 573, 617 (N.D. Ohio 2003).

In this case, the District Court trial management prevented Plaintiff from telling her story in a cohesive fashion that would be easy for the jury to understand. The 10-day trial was the *minimum* envisioned by the parties when estimating the length of

trial, and it was unreasonable within the context of trial to impose that short-end limit when there was still evidence to be presented. Reversal and remand are required.

### Court Erred in Denying Motion for a New Trial as the Verdict being Against the Weight of the Evidence

Finally, the trial court may grant a new trial "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Charyulu*, *id.* at *10-11.

By denying Defendants' motion for judgment as a matter of law, the District Court suggested that Plaintiff had presented sufficient evidence for Plaintiff to succeed on her claims. The question then becomes whether Defendants' evidence – when all of the above errors are considered – still is sufficient to support the verdict.

In *Socks-Brunot v. Hirschvogel Inc.*, 184 F.R.D. 113 (S.D. Ohio 1999), the court considered a motion for new trial based on several grounds, including an argument that the judgment was contrary to the weight of the evidence. In reweighing the evidence – see *Young*, *id.* at *8 – the court considered the errors in reweighing the evidence:

The trial in this case included admissible evidence upon which a reasonable jury could have found for either the defendant or the plaintiff. The same trial also included a large amount of prejudicial evidence which the jury should not have heard and which denied the plaintiff the right to a fair trial, entitling her to relief under Federal Rule of Civil Procedure 59 …. *Socks-Brunot*, 184 F.R.D. at 124.

The same result should apply in this case. Plaintiff was clearly unfairly prejudiced by the Rule 412 evidence, the immigration allegations, the failure to instruct the jury on spoliation, and the violation of the order precluding mention of Plaintiff's prior counsel's sanction. Additionally, changes to the trial schedule and ordering kept the jury from understanding Plaintiff's case in its entirety and in the manner intended and for which Plaintiff prepared.

### 3.     The Jury Verdict was Not Supported by the Evidence.

The jury in this matter entered a Verdict against Appellant on September 2, 2022. 3-ER-676-689.

To challenge a jury verdict on appeal on the basis of insufficient evidence, an appellant must have made a proper post-verdict Motion for Judgment as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. *Saman v. Robbins,* 173 F.3d 1150, 1154 (9th Cir.1999).

The standard of review for a jury verdict in a civil case is whether it is supported by substantial evidence. *Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1370-71 (9th Cir. 1987). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Id.* at 1371. Neither the district court nor the appellate court may weigh the evidence or assess the credibility of witnesses in determining whether substantial

evidence exists. *Id.; Transgo, Inc. v. Ajac Transmission Parts Corp.,*768 F.2d 1001, 1024 (9th Cir. 1985), *cert. denied,*474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). Questions of proximate causation are issues of fact which are properly left to the jury if reasonable persons could reach different conclusions. *White v. Roper,*901 F.2d 1501, 1506 (9th Cir. 1990).

Here, for the reasons identified in reference to Appellant's post-trial motions, and incorporated by reference herein, the jury's verdict against Plaintiff as to her causes of action was not supported by substantial evidence, and indeed, the evidence supports verdict in favor of Plaintiff as a matter of law.

### 4. The District Court Erred in Granting in Part Defendants' Motion for Summary Judgment (ECF 181).

Defendants filed a Motion for Summary Judgment on April 20, 2020. 19-ER-5237. This was joined by the co-defendants. 15-ER-4234.

Plaintiff filed an Opposition to Motion for Summary Judgment on June 12, 2020. 19-ER-5188. Plaintiff submitted a Declaration in Support of Opposition for Summary Judgment and numerous exhibits. 18-ER-4954-5186.

The Court entered an Order Granting in Part Defendants' Motion for Summary Judgment on December 16, 2020.

Appellant, throughout, during, and after trial, filed numerous motions to attempt to correct or clarify the District Court's erroneous ruling on summary judgment, all of which were denied. *See* 17-ER-4799, 604.

### *Standard of Review*

This Court will review a grant of summary judgment de novo. *EEOC v. Luce, Forward, Hamilton Scripps,* 345 F.3d 742, 746 (9th Cir. 2003). "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id. Universal Health Services, Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of

material fact that could satisfy its burden at trial."). I view the evidence and= reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. Of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

Perez contended below that the defendants should be equitably estopped from asserting the statute of limitations as a defense because from the time Ceballes first assaulted her through December 2016, he repeatedly threatened her and her family with physical harm, job termination, and deportation if she reported his conduct. Perez relies primarily on *Ateeq v. Najor*, 19 Cal. Rptr. 2d 320 (Cal. Ct. App. 1993). Perez also contended that the severe form of abuse *from all defendants,* including the negligent or improper training and supervision of the individual named defendants, constituted estoppel as to all defendants.

The Court held that whether or not to equitably estop Sbarro was a closer question, but ultimately granted summary judgment and dismissed claims against Sbarro on this basis. The Court concluded that, under the entirety of the circumstances, Sbarro should not be equitably estopped from asserting the statute of limitations as a defense. Ceballes was a Sbarro store manager, so his acts ordinarily would be attributable to Sbarro. *In re Amerco Derivative Litig.*, 252 P.3d 681, 695 (Nev. 2011) (en banc) ("Under basic corporate agency law, the actions of corporate agents are imputed to the corporation."). The Court erroneously found that Ceballes's assaults and threats on Perez were undertaken on his own behalf, not Sbarro's. *Id.* (stating an

adverse interest exception applies to imputation where the agent "is acting on his own behalf" and "totally abandons the corporation's interest"). This was the basis for the Court's summary judgment ruling regarding these issues.

This ruling was erroneous. Plaintiff's employment ended in May 2017. This action was filed on March 2, 2019. Defendants are estopped from pleading the statute of limitations defense as a result of the duress they imposed on Plaintiff through threats of deportation, physical harm, and termination of employment during the period Plaintiff was employed at Sbarro. *See Ateeq v. Najor*, 15 Cal. App. 4th 1351, 1353, 19 Cal. Rptr. 2d 320, 321 (1993), *as modified* (May 18, 1993) (holding that the defendant was equitably estopped from asserting the statute of limitations as a defense where the defendant's repeated threats of deportation caused the plaintiff to delay in filing suit); *see also Polk v. Cavin*, 447 F. App'x 840, 842 (9th Cir. 2011) (wherein the defendants were estopped from raising the statute of limitations defense in § 1983 action where the plaintiff had sufficiently alleged that the defendants threatened and intimated her).

Plaintiff's Complaint alleged that Defendant Ceballes raped her consistently over a six month period beginning in May or June of 2016, and that Ceballes secured her silence because she "feared Ceballes would harm her since he had threatened to kill her and her boyfriend, sexually assault her sister and daughter, and have her deported as he had previously threatened to do." 21-ER-6028-6084. When asked at her deposition if it was accurate that she did not initially report the sexual harassment

to Sbarro, Plaintiff testified: **"Yes. I didn't immediately report it because I was threatened with my life."** Plaintiff also stated that she could not recall whether she ever told Dorado that she felt sexually harassed, "but I wanted them to know what happened, but **I was very afraid**." Likewise, while the first instance of rape was happening, Plaintiff said she "was paralyzed and didn't know how to react. I thought I could lose my job. There were a lot of things going around in my head."

Accordingly, the doctrine of equitable estoppel on the grounds of duress applied here to toll the statute of limitations. When a statute of limitations is tolled, the days during a tolled period are not counted against the limitations period. *Socop–Gonzalez v. INS*, 272 F.3d 1176, 1195 (9th Cir.2001) (en banc). Here, Plaintiff filed suit on March 2, 2019, which on its face is over two years after the last act of sexual harassment occurred on December 15, 2016, and after she was transferred to Bally's on January 2, 2017. However, even assuming an actionable cutoff date of December 15, 2016 (the date of the last alleged rape), the tolled period of duress during the time Plaintiff was employed by Sbarro was approximately eight months, or 244 days.

Given that the period of duress is not counted against the statute of limitations, at a minimum, Plaintiff had up to and including July 15, 2019 to file suit bringing claims for relief based on defendants' tortious conduct.

The Court's rulings not applying tolling as to the majority of claims against Sbarro was wholly erroneous. The Court applied an overly-narrow view of the tolling

42

evidence alleged by Appellant and supported by the evidence in discovery. 18-ER-4954-5186. Reversal and remand is required to correct this error.

Additionally, the notion that the *Ellerth* line of cases protects defendants was simply erroneous and requires reversal on direct appeal. Under Title VII, an employer's liability for harassment depends on the status of the harasser. If a supervisor's harassment culminates in a tangible employment action, the employer is strictly liable.

However, if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Vance v. Ball State Univ.*, 570 U.S. 421, 424, 133 S. Ct. 2434, 2439, 186 L. Ed. 2d 565 (2013).

Under the Supreme Court's jurisprudence, "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Id*. (citing Ellerth and Faragher for the notion that an employer is vicariously liable when a supervisor takes a tangible employment action). *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Tangible employment actions include a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits." *Id*. (quoting *Ellerth* at 761, 118 S.Ct. 2257.)

In addition to strict liability for tangible employment actions taken by a supervisor, an employer remains subject to vicarious liability "for the supervisor's creation of a hostile work environment if the employer is unable to establish an affirmative defense." *Id*.

Here, Plaintiff suffered a retaliatory transfer by Ceballes, who was empowered by Sbarro to make the transfer as a general manager, that led to a significant change in her employment status, including reassignment to the graveyard shift that Ceballes knew ran contrary to her work schedule at Monte Carlo. In essence, if believed, Stern expressed a need for a cook that could work graveyard, and Ceballes seized the opportunity to punish Plaintiff for refusing the quid pro quo sexual harassment. *See Ellison v. Brady,* 924 F.2d 872 (9th Cir. 1991).

Further, in connection with the transfer, Stern, as Plaintiff's new manager, unceremoniously silenced her when she attempted to report the horrific events at Monte Carlo, in violation of Sbarro's open door policy. Stern told Plaintiff he "did not care" about what happened to Plaintiff at the Store, effectively severing the first line of direct reporting available to her following months of enduring a hostile work environment.

These acts, coupled with the sexual harassment by Ceballes as her prior manager at the Store, and the nefarious circumstances of the transfer, were extraordinary and egregious in nature, and constituted intolerable working conditions immediately precipitating Plaintiff's constructive discharge.

Whether viewed individually or as a whole, Plaintiff suffered tangible employment action(s) that precipitated her constructive discharge a short time later. *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (Constructive discharge occurs when the working conditions deteriorate to the point that they become sufficiently extraordinary and egregious to overcome). As a result, the *Ellerth/Faragher* affirmative defense is unavailable to Defendants.

Appellant filed numerous motions to try and correct the Court's erroneous rulings relating to summary judgment. *See* also ECF 216, 242, 339. All of these motions were erroneously denied by the District Court. In each instance the Court should have corrected its erroneous summary judgment rulings prior to trial, and its ongoing failure to do so now warrants reversal. *See 17-ER*-4799-4807; 14-3783-3871. Reversal and remand is now required on this basis.

### 5.    Prejudicial Pretrial Rulings on Procedural Matters Warrant Reversal – Withdrawal of Counsel, Trial Timing, Discovery.

Appellant has identified several highly prejudicial pretrial rulings which likewise prejudiced the overall proceeding and warrant reversal. These are rulings

45

wherein: (1) Motion to Extend Discovery was unreasonably denied; (2) Motion Permitting Appellant's Counsel to Withdraw was improperly granted to her extreme detriment; (3) Appellant's final motion to continue trial was unreasonably denied.

### Withdrawal of Counsel

A Motion for Leave to Withdraw as Counsel and for Continuance was entered on March 1, 2022 (ECF 254). 16-ER-4419. This Motion was ultimately granted over Appellant's (Sealed) objections to withdrawal. 1-ER-49. As Appellant was dependent upon withdrawing counsel, the unreasonable decision to permit withdrawal in the midst of this vast litigation prejudiced the remainder the proceeding warranting reversal.

### Second Motion to Continue Trial

On July 27, 2022, Appellant filed a Motion to Continue Trial (Second Request (ECF 331). 14-ER-3923. Appellant argued for a continuance based upon the death of their psychological expert, compromising their ability to present strong expert testimony. Appellant also sought adequate time to adjudicate her emergency motion on that subject, and to file motions to reconsider previous rulings in advance of trial. 14-ER-3923-3930. This Motion was denied by the Court's August 3, 2022 Minute Order, as announced at the hearing held on that date. 1-ER-47.

The district Court's decision to grant or deny a request to continue a hearing is reviewed for an abuse of discretion. *United States v. Flynt,* 756 F.2d 1352, 1358 (9th

Cir.1985), *amended,* 764 F.2d 675. The 9th Circuit has put forth two tests which differ only slightly, to determine whether a district Court abused its discretion in denying a requested continuance. The first, outlined in *United States v. Flynt,* 756 F.2d 1352 (9th Cir.1985), *amended,* 764 F.2d 675, requires an analysis of the following factors: [1] the extent of appellant's diligence in his efforts to ready his defense prior to the date set for hearing.... [2] how likely it is that the need for a continuance could have been met if the continuance had been granted.... [3] the extent to which granting the continuance would have inconvenienced the Court and the opposing party, including witnesses.... [4] the extent to which the appellant might have suffered harm because of the district Court's denial. *Id.* at 1359.

The unexpected death of the Appellant's central expert witness, in addition to the other issues set forth in her Motion to Continue, clearly meet this standard. There was no reasonable basis to deny the requested continuance and compel Appellant to proceed to trial at a monumental disadvantage. This erroneous order requires reversal and remand.

### *Refusal to Extend Discovery Early in Litigation*

Likewise, the Court unreasonably denied Appellant's request to extend discovery deadlines early in the litigation, prejudicing the remainder of the proceeding. 1-ER-78. This Order denied Plaintiff's Motion to Extend Discovery

Deadlines (ECF 127). *See* 20-ER-5632. The Order was objected to and the Order was affirmed by the District Court. 1-ER-77.

A request to extend deadlines in the Court's scheduling order must be supported by a showing of "good cause" for the extension. Local Rule 26-4; *see also Johnson,* 975 F.2d at 608– The good cause inquiry focuses mostly on the movant's diligence. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000). Good cause to extend a discovery deadline exists "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609.

Given the immense scope of this litigation, which resulted in litigation between 2019 through 2023 and now extending to 2024 on direct appeal, the request early on in this litigation to extend discovery was commensurate with the scope of factual matters and evidence to be addressed. The denial of the motion impermissibly curtailed Plaintiff's ability to litigate the sexual assaults and other matters set forth in her Amended Complaint. This error warrants reversal for a new trial.

### 6. <u>The District Court's rulings, set forth in Minute Order 342, must be reversed as erroneous and abuse of discretion.</u>

The Court erred by granting in part) Motion in Limine (ECF 323), in denying plaintiff's emergency motion to substitute Dr. Roitman's report and testimony (ECF No. 325), and another the denial of Plaintiff's additional motion for reconsideration (ECF No. 339). *See* 1-ER-47.

Specifically, this Court should reverse the District Court's denial of Plaintiff's Emergency Motion to Substitute the Report of its Deceased Expert, and its Motion for Reconsideration of earlier order (ECF 325). The Court denied the replacement expert request to replace a deceased expert witness via Minute order 342 as announced at hearing. 1-ER-47. The hearing was held August 3, 2022. 55-ER-3740.

In the context of the death of an expert witness, "courts often find good cause to substitute experts." See, e.g., *GF & C Holding Co.,* 2012 WL 5907092, at *1 ("Plaintiff's earlier request to extend the time to disclose its expert because of the untimely demise of [the prior expert witness] clearly met the good cause standard."); *Stewart Title Guar. Co. v. Suisse,* 2014 WL 10290846, at *2–3 (D. Idaho Oct. 15, 2014) (holding that the "untimely passing" of the expert was good cause for substitution); *In re Northrop Grumman Corp. ERISA Litig.*, 2016 WL 6826171, at *3 (C.D. Cal. Apr. 7, 2016); *Brooks v. Cnty. of San Joaquin,* 2012 WL 5927416, at *1 (E.D. Cal. November 26, 2012); *Miesen v. Henderson,* No. 1:10-CV-00404- DCN, 2022 WL 392931, at *2 (D. Idaho Feb. 9, 2022). The Court below, in 2015, held in an order on a Motion for Reconsideration that while courts will deny requests for additional time to file expert reports when the same are late, "[t]his rule is not directly applicable because Rebel's original expert report was timely filed and Rebel now seeks to formally substitute a replacement expert." See *Green v. City and County of San Francisco,* No. 10–cv– 2649, 2015 WL 1738025, at *4 (N.D.Cal. Apr.8, 2015)

(declining to apply the late disclosure rule to "the timely replacement of an expert due to the unavailability of the original expert"). *Rebel Commc'ns, LLC v. Virgin Valley Water Dist.*, No. 2:10-CV-0513-LRH-GWF, 2015 WL 5430297, at *2 (D. Nev. Sept. 14, 2015) (emphasis added).

Furthermore, Appellant objected to any replacement for the live testimony of a substitute expert. Federal Rule of Civil Procedure 43 governs the taking of testimony. Generally, witnesses' testimony must be taken in open court unless otherwise provided by rule or statute. Fed. R. Civ. P. 43(a). Courts in this Circuit have found that the Rules of Civil Procedure evidence a "preference for" and emphasize the "importance of live testimony in open court." *Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1147–48 (E.D. Cal. 2020). See also *Obrey v. England,* 215 F. App'x 621 (9th Cir. 2006) discussing "Judiciary's strong preference for oral testimony in open court." The impact of live testimony, versus even a dramatic and well inflected reading done by a trained actor (which would be impossible to accurately re-create as Dr. Roitman's testimony was not recorded via visual or audio means) cannot be overstated. It is simply unfair to require Plaintiff to present her expert testimony via a dry recitation of previous testimony while Defendants' expert will be live, present, and able to interact, at least to some extent, with the jury.

It was beyond the discretion of the District Court to act so punitively towards a litigant, Appellant, merely because their central expert witness had passed away

during the course of litigation. The only legal option reasonably available to the Court in such circumstance was to permit Appellant to replace her central expert witness with the live testimony of a replacement witness, and to continue trial if doing so was necessary to accommodate this. The denial of Appellant's motion was thus an abuse of discretion.

### 7.    The Orders of Attorney's Fees, Costs Taxed, and Bill of Costs, Should all be Vacated and Set Aside.

Appellant objected to the award of attorney's Fees (ECF 116). 20-ER-5679. Additionally four Bills of Costs were approved by the District Court (ECF 458, 457, 429, 428) 1-ER-28-44.

As the Orders for relief underlying these costs must be overturned for the reasons set forth in this appeal, the award of attorney's fees and bills of costs must likewise be overturned and vacated, as they are uniformly premised on the validity of the orders and judgments, erroneous below, which are identified as part of this direct appeal.

### 8.      The District Court's Ruling, set forth in Minute Order ECF 381, must be reversed for their erroneous denial of Plaintiff's Motion to Reconsider (ECF 350) and the Court's ruling as to each sides' peremptory challenges.

The Court on August 16, 2022 made two rulings as part of Minute Order ECF 381 which are challenged on appeal. First, the District Court denied Appellant's Motion ECF 350 which sought to clarify and/or reconsider prior rulings regarding the

relevance of the Appellant's immigration file during trial. Second, the Court (at the hearing) made rulings regarding peremptory challenges. 1-ER-46; 13-ER-3390-3475.

As it relates to peremptory challenges, Appellant objected to the Sbarro defendants each having three challenges *each*, when they were essentially a unified defense during trial, while Plaintiff received only three challenges herself, weighting jury selection far in the Defendants' favor and prejudice the proceeding. 13-ER-3415-3148.

The right to peremptory challenges in civil cases exists by virtue of Federal Rule of Civil Procedure 47(b) and 28 U.S.C. § 1870, three challenges per party or side, not by virtue of the Constitution. Erroneous denial of a challenge is therefore subject to Federal Rule of Civil Procedure 61 on harmless error, requiring us to disregard error not affecting "substantial rights." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 709 F.3d 872, 880 (9th Cir. 2013).

Here it was an error to permit the unified defense 3 challenge for each defendant, which then dwarfed the number of challenged permitted to Plaintiff. Reversal and remand are required as this deprived Plaintiff of a fair trial.

Second, Appellant appeals the District Court's denial of her Motion to Reconsider (ECF 350). This Motion was aimed at preventing the Court's erroneous ruling(s) regarding the admissibility of "immigration file" evidence at trial from

infecting trial, which was ultimately unsuccessful because the Court erroneously denied this motion to reconsider. 1-ER-46.

**9.**     <u>**The District Court's rulings, set forth in Minute Order 319, must be reversed as erroneous and an abuse of discretion.**</u>

Finally, the District Court entered Minute Order 319 which made numerous rulings which are challenged on appeal. 1-ER-48.

Specifically, Appellant challenges the Court's denial of her Motions in Limine and her Motion for Sanctions (ECF 235, 250). *See* 1-ER-48; 4711. These rulings were set forth by the District Court in its Minute Order (1-ER-48) as well as at the time of hearing on July 14, 2023. 15-ER-4165-4175.

The District Court's ruling(s) resolving ECF 250 as it relates to Appellant's arguments regarding the relevance or irrelevance of matters relating to her "immigration file" has already been addressed herein within the context of her Motion to Reconsider, and those arguments are incorporated by reference. *See also* ECF 251 16-ER-4428-4476. The Court's rulings with respect to the omnibus motion in limine (ECF 251) as to the admissibility of evidence were clearly erroneous and warrant reversal.

Additionally, the Court erred when it denied Appellant's Motion for Sanctions relating to Spoliation.  Spoliation is the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or

reasonably foreseeable litigation." *Soule v. P.F. Chang's China Bistro, Inc., No. 218CV02239GMNEJY*, 2020 WL 959245, at *4 (D. Nev. Feb. 26, 2020). This Court has the inherent authority to impose sanctions based on a party's failure to preserve relevant evidence, and sanctions may be imposed if the party was on notice that the evidence was potentially relevant to pending or reasonably foreseeable litigation and failed to take reasonable steps to preserve it. *Fernandez v. Centric,* No. 3:12-CV-00401-LRH, 2014 WL 2042148, at *3 (D. Nev. May 16, 2014).

As this matter has already been briefed within the context of Appellant's Post-Judgment Motions, those arguments are incorporated herein by reference. *See* also ECF 235, 17-ER-4711-4780. Suffice to say, the evidence presented along with Motion ECF 235, as well as the evidence later introduced at trial, supported the pre-trial and post-judgment sanctions requested by Appellant, and denial of those requests represents an abuse of discretion requiring reversal.

## 10. **Improper Arguments During Closing Arguments Require Reversal Under Plain Error.**

Golden rule arguments at the time of closing are improper. *United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999) (improper vouching); *Fields v. Woodford*, 309 F.3d 1095, 1109 (9th Cir.), *amended*, 315 F.3d 1062 (9th Cir. 2002) (golden rule).

Where an objection is not lodged contemporaneously at the time of closing argument to such "golden rule" arguments, the improper argument is reviewed under plain error. U.*S. v. Doss*, 630 F.3d 1181, 1195 (9th Cir. 2011).

Here, counsel for Defendants made repeated golden rule closing arguments at the close of trial. 12-ER-3299-3361. Counsel for Defendants made several other inappropriate arguments or remarks of various characters, including:

- "And someone else overseeing this, which the lawyers of Sbarro will address, but you've got the sex-slave watchdog over here. That's how far out of whack this got." 12-ER-3306-3307.

This statement denigrated and mocked the Plaintiff's theory of the case and denigrated Plaintiff's counsel for putting on the case as a "sex-slave watchdog" which was wholly inappropriate, inflammatory, and prejudicial.

- "And there's something else I can do for you because you know I told you about how well I did it with my husband who's incarcerated now for molesting her son and daughter and abusing them sexually, as well as herself, which is very traumatic." 12-ER-3313.

This argument was improper as it created a direct nexus between Plaintiff's sexual conduct at issue in the case, and the Plaintiff's husband's criminal offenses of molestation, and drawing the connection between the two was prejudicial, highly inflammatory, and not supported by the evidence.

- "But something went wrong. Something clicked. I don't know. Is it immigration status? Is it money? Is it both? You have to decide that. There's a motive here. There's a motive. There's a history of drug use, on and off. Methamphetamine. Serious. You heard about the problems with Oscar doing some time. Who knows." 12-ER-3315.

- "Addictions hurt more than just the user. Addictions devastate families, close ones, friend, colleagues. They affect the employer and the employees. Would turn an allegation of sexual abuse against multiple parties, my client is feeling abused, has been abused." (12-ER-3316).

Again, invoking Plaintiff's husbands crimes and then asking "who knows?" about motive is prejudicial, inflammatory, and not supported by the evidence. The attempt to taint Plaintiff's allegations because her husband was convicted of heinous crimes was improper. Likewise, the repeated conflation of past alleged Methamphetamine use, with allegations of lying at the time of trial, was not supported by the evidence because there is no evidence in the record that Plaintiff was under the influence of Methamphetamine at the time of trial.

- "That's what you have to believe. Who's doing it? Where's it -- where's it stop? It stops here." (12-ER-3319).

- "No one wins a case like this. Nobody wins. There's scars that will always permeate, everyone's lives touched by this lawsuit, those in it now and

those who were dismissed earlier. No one wins. There's no joy if Zach prevails and you find out that she didn't prove her case, her assault, battery, false imprisonment -- he doesn't win. But you send a signal." (12-ER-3319).

- "As I said, innocent until proven guilty. Firing people on accusations, taking action on accusations is not the way the system works." (12-ER 3365).

- "The easy thing to do for Sbarro would have been to quietly settle behind closed doors. Do you remember that testimony? Sbarro did the hard thing because it's the right thing, and that's why we're here today." (12-ER-3365).

- "He testified his sister-in-law's at home babysitting her two kids. Hey, guess what, Victoria? Your husband's been doing something at work you may not know about. Think about that, what he went through." 12-ER-3307.

Here there are several improper "golden rule" or societal arguments, including needing to put a "stop" to alleged false allegations in general, "no one wins a case like this" again appealing to the general civil public, the need to "send a signal" to others in society, a need to enforce "the way the system works," and the need to reward Sbarro for not settling the case but taking the case to trial as "the right thing" for

society, as implied by the argument. Indeed, the last statement argues that the jury should enact a verdict because of what defendant "went through," despite not being asked to resolve any counterclaims from that defendant, which again was an improper appeal to the emotions. *Id*.

- "In any event, when you come -- when you review question 18, the answer to the question I believe the evidence supports is a no." (EPR 3340)

- "And there hasn't been a stitch of evidence, not a single witness has come in to corroborate this allegation that she was threatened with deportation. (12-ER-3348).

- "The answer to Number 25 would be -- with the question being "Has Meza-Perez proved by a preponderance of the evidence that she was subjected to quid pro quo sexual harassment," the answer is no." 12-ER-3350.

- "Even if you get to this question, again, the answer is no. 12-ER-3350. And, again, questions 29, 30, and 31 are zero, no, and zero. That's the quid pro quo claim." 12-ER-3350.

Again, there is a thin line between argument and improper opinions or instructions from the attorney. Here, the attorney improperly stated what "I believe the evidence" to be. Counsel also repeatedly simply made conclusory instructions to the jurors about

how to fill out the verdict form. While many of these "instructions" were within the context of argument and reference to the evidence, the above identified instances are better characterized as rushed-through instructions to do something, not argument, which was improper.

Although these matters were not objected to, the nature of the totality of the closing arguments offered by the defendants, which were improper, now warrants reversal.

## **CONCLUSION**

For the reasons set forth herein, reversal for a new trial upon each of the grounds set forth in this appeal is the appropriate remedy.

Dated this 27th day of February, 2024

_____/s/Hardeep Sull_____

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel for Appellant,, hereby certify that this brief contains 13,802

words, excluding the items exempted by FRAP 32(f).  The brief's type size and font

comply with FRAP 32(a)(5) and (6).   I further certify that this brief complies with

the word limit of Circuit Rule 32-1.

Dated this 27th day of February, 2024

____/s/Hardeep Sull_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify and affirm that this document was filed electronically with the above Court and served upon all parties registered to receive electronic service in the above-captioned matter, including upon counsel for the Appellees.

Dated this 27th day of February, 2024

___/s/Hardeep Sull___

61