No. 23-15702

# In the
# United States Court of Appeals
# For the Ninth Circuit

SANDRA M. MEZA-PEREZ,

*Plaintiff – Appellant,*

v.

SBARRO, LLC; et. al.,

*Defendants – Appellees*

On Appeal from the United States District Court for the District of Nevada
Case No. 2:19-cv-373-APG-EJY

Honorable Andrew Gordon, Presiding

## APPELLEE ZACHARY CEBALLES'S ANSWERING BRIEF

PATRICK N. CHAPIN
Nevada Bar No. 4946
**PATRICK N. CHAPIN, LTD.**
129 Cassia Way
Henderson, NV 89014
(702) 433-7295

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1(a) and (d)(1), Appellee Zachary Ceballes, an individual, submits this statement identifying the following entities:

- There are none.

Dated; April 25, 2024                    Respectfully submitted,

                                         PATRICK N. CHAPIN, LTD.

                                         By: <u>/s/ Patrick N. Chapin</u>
                                              Attorney for Zachary Ceballes

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ..................................................................................1

STATEMENT OF JURISDICTION.........................................................1

ISSUES PRESENTED............................................................................1

JOINDER ...............................................................................................2

STATEMENT OF THE CASE ................................................................2

SUMMARY OF THE ARGUMENT .......................................................2

LEGAL ARGUMENT.............................................................................4

A.   *The district court did not error in overruling Perez's Rule 412 objections.* ......4

B.   *Defendant Ceballes did not engage in prohibited "Golden Rule" arguments.* 10

CONCLUSION .....................................................................................13

STATEMENT OF RELATED CASES ...................................................14

CERTIFICATE OF COMPLIANCE......................................................15

CERTIFICATE OF SERVICE ..............................................................16

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).......................................3

*Cooper v. Firestone Tire and Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991)...13

*Fields v. Woodford*, 309 F.3d 1095, 1109 (9th Cir. 2002) .....................................12

*Gretzinger v. University of Haw. Prof'l Assembly*, 1998 U.S. App. LEXIS 15370, *4-6 (9th Cir. July 7, 1998) **UNPUBLISHED** .......................................................8

*Howard v. Connett*, 2017 U.S. Dist. LEXIS 172130, *9-10, 2017 WL 4682300 (D. Nev. Oct. 17, 2017) ................................................................................................12

*Indep. Towers of Wash.*, 350 F.3d at 929 ................................................................4

*Jordan v. Clark*, 847 F.2d 1368, 1375 (9th Cir. 1988)..............................................3

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986) ....................................3

*Nuelsen v. Sorensen*, 293 F.2d 454, 460 (9th Cir. 1961).........................................3

*Rattlesnake Coal.*, 509 F.3d at 1100.........................................................................4

*S.M. v. J.K.*, 2001 U.S. App. LEXIS 30135, *13-14 (9th Cir. 2011) .......................7

*Stampf v. Long Island R.R.*, 761 F.3d 192, 203 (2d. Cir. 2014) ..............................6

*Taddeo v. Am. Invsco Corp.*, 2015 U.S. Dist. LEXIS 94052, *24, 2015 WL 4416490 (D. Nev. July 20, 2015) ........................................................................12

*United States v. Combs*, 379 F.3d 564, 568 (9th Cir. 2004)...................................12

*United States v. Soto*, 769 Fed. Appx. 472, 473, 2019 U.S. App. LEXIS 13177, *2, 2019 WL 1952688 (9th Cir. May 1, 2019) **UNPUBLISHED** ...........................12

*United States v. St. Marks*, 460 Fed. Appx. 682, 683, 2011 U.S. App. LEXIS 24059, *2-3 (9th Cir. Dec. 2, 2011) **UNPUBLISHED** ........................................12

**Statutes/Rules**

Fed. R. App. P. 28(a)(9) ...............................................................................4

Fed. R. Evid. 412 ........................................................................................4

Fed. R. Evid. 412(a)(1), (2) .........................................................................5

Fed. R. Evid. 403 ........................................................................................8

## INTRODUCTION

Sandra Meza-Perez (Perez) and Zachary Ceballes (Ceballes) started working together at Sbarro Pizza (Sbarro) within the Monte Carlo Hotel-Casino in April 2016. Prior to April 2016 they had never met nor knew of one another. Perez worked as a food preparer, cleaner and cook while at the Sbarro Monte-Carlo. Ceballes was one of her numerous supervisors depending on the shift she worked. Two months after Perez came to work at Sbarro, she and Ceballes began having covert and consensual sexual relations while at work. There is no dispute they engaged in more than twenty consensual sexual encounters while working together. All their sexual encounters occurred at work in the form of intercourse or oral sex. Their agreed at-work sexual affair began in June 2016 and ended in December 2016 when Perez transferred to the Sbarro Bally's location. Perez and Ceballes never saw nor communicated with one another after December 2016.

After ten-days of trial, a ten person culturally and ethnically diverse jury returned all verdicts, without exception, in favor of Ceballes and Sbarro.

## STATEMENT OF JURISDICTION

Ceballes does not contest Perez's jurisdictional statement.

## ISSUES PRESENTED

1. Did the district court error in overruling Perez's Rule 412 objections?

2.    Did defense counsel make "Golden Rule" arguments in closing, and if found to be so, did Perez waive any challenge by failing to object?

## JOINDER

Ceballes joins <u>each</u> Section of Sbarro's Answering Brief as if re-written herein, unless otherwise distinguished.

## STATEMENT OF THE CASE

Ceballes incorporates Sbarro's version of Statement of the Case as if fully re-written herein.

## SUMMARY OF THE ARGUMENT

Perez's appeal as to Ceballes fails simply because this case centered on credibility determinations. Credibility determinations are within the exclusive province of the jury. In this case it came down to what Perez said versus what Ceballes said.

The primary, and essentially, only factual issue at trial was whether the relationship between Perez and Ceballes was consensual. Perez claimed it was not, while Ceballes testified it was. And they kept it quiet from everybody while it went on at work for months during the time they worked together in 2016. The jury believed Ceballes and rendered a verdict in his favor. In this sense, consent is the determinative issue and because the jury found for Ceballes, Perez's complaints against him should fail.

- 2 -

This Court does not set aside findings of fact unless it is "left with the definite and firm conviction that a mistake has been committed." *Jordan v. Clark*, 847 F.2d 1368, 1375 (9th Cir. 1988) (affirming judgment denying Title VII sexual discrimination and harassment claims in a bench trial) (internal citation omitted). In particular, "credibility determinations are insulated from appellate review." *Id.* (internal alteration and citation omitted); *see Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986) ("[T]he question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact . . ."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . ."). In fact, the Ninth Circuit has held that, even when sitting as the singular factfinder, "the trial court's appraisal of the credibility of the witnesses is to be accepted, no challenge to such appraisal being permissible in the appellate court." *Nuelsen v. Sorensen*, 293 F.2d 454, 460 (9th Cir. 1961). Here, a ten-person jury deliberated and unanimously credited Ceballes' characterization of his relationship with Perez as consensual. The jury did not believe Perez. The jury's credibility determinations in this regard "are insulated from appellate review" and unassailable under the facts presented. *Jordan*, 847 F.2d at 1375; *Nuelsen*, 293 F.2d

at 460. When considered from this premise, Perez's complaints against Ceballes on appeal fail.

## LEGAL ARGUMENT

### A. The district court did not error in overruling Perez's Rule 412 objections.

Perez first contends that defendants did not comply with Fed. R. Evid. 412 because they did not file a notice of intent to introduce evidence concerning her sexual history, in particular as it pertains to a question about Perez's relationships with her ex-boyfriend and her ex-husband. **ECF No. 21, at p. 24-25**. Perez fails to cite to the particular portion(s) of the trial transcript she refers to, inappropriately leaving defendants and the Court to sift through the record for her. *Indep. Towers of Wash.*, 350 F.3d at 929 ("Judges are not like pigs, hunting for truffles buried in briefs"); *Rattlesnake Coal.*, 509 F.3d at 1100 ("The Federal Rules of Appellate Procedure require that a brief contain the 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . .'") (quoting Fed. R. App. P. 28(a)(9)).

Perez argued below, as she does here, that she was entitled to testify on direct examination concerning her sexual relationship with her husband, but that defendants were not permitted to question her on the topic in response. Rather, according to Perez, the defense was supposed to anticipate her counsel's statements and her testimony pre-trial, and file a motion under Rule 412 in order to ask her

- 4 -

questions or elicit testimony on the same issue. She wished to use Rule 412 as both a shield and sword. A colloquy took place during trial and the district court did not allow her to do just that. **9-ER-2258-62, 2323-25**. The district court again correctly denied Perez's post-trial motion on this topic, finding that it was not error to admit such testimony and that, even if it were, she was not substantially prejudiced because "[i]t is more probable than not that the jury would have reached the same verdict even if this isolated comment over the course of a ten-day trial had been excluded." **1-ER-9**. This Court should affirm for any one of several reasons.

First, Rule 412 does not apply. The Rule states that evidence "offered to prove that a victim engaged in other sexual behavior" or evidence "offered to prove a victim's sexual predisposition" is not admissible unless it falls into one of the enumerated exceptions and a motion is filed. Fed. R. Evid. 412(a)(1), (2). Evidence concerning Perez's relationship with her husband, or her statement to Ceballes that she enjoyed performing oral sex on her husband, was not offered to prove that Perez did, in fact, "engage in other sexual behavior" (which it was undisputed she did with Ceballes) or to prove her "sexual predisposition" i.e., that she actually did enjoy performing oral sex. Rather, it was offered to illustrate what Perez told Ceballes when the two were flirting and, thus, Ceballes' perception of his interactions with Perez. That Perez told Ceballes she enjoyed performing oral sex on her partners (whether true or not) was a piece of what ultimately led Ceballes to believe that the

relationship between the two of them was consensual and welcome. Whether Perez actually "engaged" in that other sexual behavior, or in truth had a "predisposition" for the same, is immaterial. Because the testimony was not offered to prove the fact, Rule 412 does not apply to begin with.

Second, to the extent Perez argues that Rule 412, which "is not categorical or absolute," *Stampf v. Long Island R.R.*, 761 F.3d 192, 203 (2d. Cir. 2014), was applicable, she waived her protections under it by affirmatively placing this material in front of the jury. For example, in her opening statement, Perez's counsel made explicit references to Perez's husband allegedly sexually abusing her. **4-ER-963** ("About two years before she started working at Sbarro, her husband had gone to jail for beating her, for raping her. . ."). Perez and her counsel then attempted to use the alleged abuse by her husband against defendants, arguing that defendants knew about those circumstances and preyed upon them. ***Id.* at 981** ("[S]he'd already been broken by an abusive ex-husband that made her more vulnerable. That made her more vulnerable than the average and they knew it. Everybody knew it."). Perez testified *on direct* that she had been the victim of domestic violence and talked to the jury about "[w]hat we went through with my husband." **6-ER-1479, 1577**. Perez's psychiatric expert, Dr. Roitman, also testified at deposition and wrote in his report on the topic, which was read into evidence. **11-ER-2876, 2888** ("Ms. Perez described an 11-year relationship with an abusive husband . . . he forcibly and

painfully sodomized her. He covered her mouth to mute her screaming. Ms. Perez explained, 'My husband accused me of being frigid and I never lubricated. He said she felt like he was having sex with a corpse.'"). Perez's counsel also elicited testimony from Ceballes about his conversations with Perez concerning sexual activities. **7-ER-1605-06**. And in closing, Perez's counsel again referenced her allegations concerning her relationship with her husband, telling the jury that defendants "want you to hold her past against her. They want you to believe that she's either a slut or a nut." **12-ER-3296-97**; *id.* at 3366 ("[Defendants] want you to pretend that families are like you see on TV; that they're always perfect. But you heard their witnesses say . . . that [Perez's] children are angry with her because she didn't protect them [from her husband]"); *id.* **at 3367** ("They want you to believe that Sandra was either a nut or a slut . . . Because they have to make her a nut or a slut.").

Perez may not weaponize Rule 412 when it suits her while at the same time invoking its protections when it does not. By placing her prior sexual history with her husband before the jury from the beginning to the end of trial, Perez waived any argument that her relationship with him is entirely private and that she was entitled to Rule 412's protections. *S.M. v. J.K.*, 2001 U.S. App. LEXIS 30135, *13-14 (9th Cir. 2011) ("Had Defendant attempted to introduce evidence that Plaintiff had previously been assaulted, it would have been subject to Rule 412. By introducing

the evidence herself, Plaintiff opened the door to the admission of further related evidence."). Indeed, the purpose of the rule is to "safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." *See* Notes of Advisory Committee on 1994 amendment. Perez and her counsel cannot introduce aspects of her relationship with her husband to the jury and frequently revisit it throughout the trial, then claim that evidence concerning that same relationship, and which paints her in a different light, improperly invades her privacy. Given Perez opened the door through her testimony, her counsel's representations, and her expert, the district court considered the evidence and context, engaged in a Rule 403 analysis, and properly found that probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. **9-ER-2324-25**; *see also Gretzinger v. University of Haw. Prof'l Assembly*, 1998 U.S. App. LEXIS 15370, *4-6 (9th Cir. July 7, 1998) **UNPUBLISHED** (Rule 412 evidence admissible after Rule 403 analysis).

Moreover, there was a dispute as to the source of Perez's alleged emotional distress. She contended that it was attributable to the events she alleged at Sbarro, while Defendants contended that any emotional damage pre-dated her employment and was attributable to prior life experiences, such as the abuse she claims at the hand of her husband. *See*, *e.g.*, *Gretzinger*, 1998 U.S. App. LEXIS 15370, *4-5.

("[U]nder either a Rule 403 or Rule 412 analysis, the district court did not abuse its discretion in admitting the evidence regarding Gretzinger's extramarital affair or her sexual orientation. Gretzinger's alleged emotional distress damages were based on her claim that she was suffering from Post Traumatic Stress Disorder as a result of Lamb's harassment. The trial court properly allowed Lamb to rebut this claim with evidence that Gretzinger's distress had other potential sources."). Such evidence was relevant for this additional reason.

Finally, even had the district court found Rule 412 applied and that Perez did not waive its protection, Ceballes submits that the district court would have allowed this evidence to come in upon any Rule 412 motion and hearing anyway, given its highly probative value and the intertwined nature of the evidence with the facts and circumstances alleged at trial. **9-ER-2325** (District Court: "In any event, given the fact that the testimony appears to be intricately involved with the allegations in this case, I'm going to overrule the 412 objection."). As explained by the district court in its order denying Perez's post-trial motion on this subject:

> Allowing the questions and answers was not an abuse of discretion. First, the evidence was not offered to prove that Meza-Perez engaged in other sexual behavior or to prove her sexual predisposition. It did not matter whether Meza-Perez in fact engaged in oral sex with prior partners or enjoyed doing so. Rather, the evidence was introduced to show the progression of the interactions between Ceballes and Meza-Perez to explain why, along with other interactions between them, Ceballes perceived that Meza-Perez would welcome a sexual proposition from him. The defendants therefore did not need to file a pretrial Rule 412 motion.

Further, these conversations took place in the workplace during work hours, as did their subsequent sexual encounters. Whether the sexual contact was welcome was a pivotal issue at trial. Consequently, Meza-Perez's own sexualized workplace comments (if the jury believed Ceballes) were highly probative, not unfairly prejudicial, and did not harm her in the manner contemplated by Rule 412. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 69 (1986) (stating that "a complainant's sexually provocative speech or dress" is "obviously relevant" in a sexual harassment case). **1-ER-8**.

These same arguments were raised by Perez in post-trial motions, which the district court correctly rejected. **1-ER-2-27**. Perez's Rule 412 challenge is unavailing.

### B. *Defendant Ceballes did not engage in prohibited "Golden Rule" arguments.*

Defendant Ceballes did not engage in prohibited "Golden Rule" arguments.

Perez cites to the following as "golden rule" violations from counsel for Ceballes in closing arguments:

> "And someone else overseeing this, which the lawyers of Sbarro will address, but you've got the sex-slave watchdog over here[1]. That's how far out of whack this got." **12-ER-3306—3307**.

> "And there's something else I can do for you because you know I told you about how well I did it with my husband who's incarcerated now for molesting her son and daughter and abusing them sexually, as well as herself, which is very traumatic."[2] **12-ER-3313**.

---

[1] Referring to those personal attacks and allegations Perez made against Dana Dorado, Sbarro's Human Resource Director.

[2] Counsel for Ceballes is in fact conveying sympathy and a level of empathy to the jury regarding Perez.

"But something went wrong. Something clicked. I don't know. Is it immigration status? Is it money? Is it both? You have to decide that. There's a motive here. There's a motive. There's a history of drug use, on and off. Methamphetamine. Serious. You heard about the problems with Oscar doing some time. Who knows."[3] **12-ER-3315**.

"Addictions hurt more than just the user. Addictions devastate families, close ones, friend and colleagues. They affect the employer and the employees. Would turn an allegation of sexual abuse against multiple parties, my client is feeling abused, has been abused."[4] **12-ER-3316.**

That's what you have to believe. Who's doing it? Where's it— Where's it stop? It stops here."[5] **12-ER-3319**.

No one wins a case like this. Nobody wins. There's scars that will always permeate, everyone's lives touched by this lawsuit, those in it now and those who dismissed earlier. No one wins. There's no joy if Zach prevails and you find out that she didn't prove her case, her assault, battery, false imprisonment—he doesn't win. But you send a signal."[6] **12-ER-3319**.

Perez is incorrect in her flawed assessments for any of these Ceballes closing arguments. She arrives at her "golden rule" theory only by implication and fails to cite to the record to support any of them.

---

[3] All appropriate argument that accurately captures and reflects testimonial evidence the jury heard over the ten-day trial.

[4] All statements are proper argument.

[5] Proper argument allowed within the confines of closing argument and after the jury has heard all the evidence.

[6] Once again, nothing improper about this argument. It conveys a sentiment within the confines allowed in closing argument.

"[A]ttorneys violate the 'golden rule' by asking the jurors to place themselves in the plaintiff's position." *Taddeo v. Am. Invsco Corp.*, 2015 U.S. Dist. LEXIS 94052, *24, 2015 WL 4416490 (D. Nev. July 20, 2015). In none of the statements cited by Perez did Ceballes's counsel ask the jurors to place themselves in Perez's position, thus her argument is misplaced at the outset. *Id.; see also United States v. St. Marks*, 460 Fed. Appx. 682, 683, 2011 U.S. App. LEXIS 24059, *2-3 (9th Cir. Dec. 2, 2011) **UNPUBLISHED**: ("The parties dispute whether or not this statement was a prohibited "golden rule argument," a label that is more typically attached to requests by **a prosecutor or plaintiff's attorney that the jurors step into the shoes of the victim or plaintiff**.") (emphasis added) (citing *Fields v. Woodford*, 309 F.3d 1095, 1109 (9th Cir. 2002)).

The backwards nature of this argument aside, Perez concedes that she did not object during closing argument (**ECF No. 21 at 59**), thus the record is reviewed for plain error. *United States v. Soto*, 769 Fed. Appx. 472, 473, 2019 U.S. App. LEXIS 13177, *2, 2019 WL 1952688 (9th Cir. May 1, 2019) **UNPUBLISHED** ("[Appellant] did not object [to "Golden Rule" arguments] at the time, so these statements are reviewed only for plain error.") (citing *United States v. Combs*, 379 F.3d 564, 568 (9th Cir. 2004)). Perez's failure to object is itself telling and, beyond that, her "[f]ailure to seek a mistrial weighs against a determination of prejudice" as it concerns the allegedly improper statements. *Howard v. Connett*, 2017 U.S. Dist.

LEXIS 172130, *9-10, 2017 WL 4682300 (D. Nev. Oct. 17, 2017) (*citing Cooper v. Firestone Tire and Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991)).  None of the statements Perez complains of are "Golden Rule" arguments or are otherwise improper to begin with, and none prejudiced her right to a fair trial.

## **<u>CONCLUSION</u>**

This Court should affirm the jury's verdict in favor of Ceballes.

DATED this 25th day of April, 2024.

Respectfully submitted,

PATRICK N. CHAPIN, LTD.

/s/ *Patrick N. Chapin*
Attorney for Appellee Zachary Ceballes

## <u>STATEMENT OF RELATED CASES</u>

Ceballes is unaware of any related cases pending before this Court.


DATED this 25th day of April, 2024.      Respectfully submitted,

PATRICK N. CHAPIN, LTD.

/s/ *Patrick N. Chapin*
Attorney for Appellee Zachary Ceballes

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel for Appellee Ceballes, hereby certify that this brief contains 3697 words, excluding the items exempted by FRAP 32(f). The brief's type size and font comply with FRAP 32(a)(5) and (6). I further certify that this brief complies with the word limit of Circuit Rule 32-1.

DATED this 25th day of April, 2024.        Respectfully submitted,

PATRICK N. CHAPIN, LTD.

/s/ *Patrick N. Chapin*
Attorney for Appellee Zachary Ceballes

- 15 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed electronically with the above Court and served upon all parties registered to receive electronic service in the above-captioned matter.

DATED this 25th day of April, 2024.     Respectfully submitted,

PATRICK N. CHAPIN, LTD.

/s/ *Patrick N. Chapin*
Attorney for Appellee Zachary Ceballes