No. 23-15702

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

SANDRA M MEZA-PEREZ
Plaintiff-Appellant,

v.

SBARRO LLC et al..,
Defendant-Appellee.

---

Appeal from United States District Court for the Southern District of Nevada
Civil Case No. 2:19-cv-00373-APG-EJY

---

## PLAINTIFF-APPELLANT'S
## REPLY BRIEF AS TO SBARRO'S ANSWERING BRIEF (DKT. NO. 46) AND
## ZACHARY CEBALLES'S ANSWERING BRIEF (DKT. NO. 42)

---

HARDEEP SULL, ESQ.
Nevada State Bar No. 12108
SULL AND ASSOCIATES PLLC
3753 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Tel: (702) 953-9500
E-Mail: dee@sullglobal.com

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………...……..iii

ARGUMENT……………………………………………….…………1

CONCLUSION……………………………………………………..30

CERTIFICATE OF COMPLIANCE………………………………..31

CERTIFICATE OF SERVICE………………………...……………32

# TABLE OF AUTHORITIES

*A.W. v. I.B. Corp.*, 224 F.R.D. 20, 24 (D. Me. 2004)……………….………………28

*AlohaCare v. Hawaii, Dep't of Human Servs.*, 572 F.3d 740, 744-45 (9th Cir. 2009)……………………………………………………………………………5

*Brooks v. Cnty. of San Joaquin,* 2012 WL 5927416, at *1 (E.D. Cal. November 26, 2012)……………………………………………………….………………..24

*Charyulu v. California Casualty Indemnity Exchange*, 523 F. App'x 478, 480 (9th Cir. 2013)……………………………………………………...……………..12,13

*Bank of N.Y. Mellon v. 886 Park Walk Tr.*, No. 19-16281, at *2 (9th Cir. July 13, 2020)……………………………………………………………………………5

*Gorio v. Block*, 972 F.2d 1339, 1339 (9th Cir. 1992)………………………………21

*GF & C Holding Co.,* 2012 WL 5907092, at *1……………………………..……….24

*In re Northrop Grumman Corp. ERISA Litig.*, 2016 WL 6826171, at *3 (C.D. Cal. Apr. 7, 2016)……………………………………………………….……………..24

*Jordan v. Clark,* 847 F.2d 1368, 1375 (9th Cir. 1988)………………………….……..4

*Miesen v. Henderson,* No. 1:10-CV-00404- DCN, 2022 WL 392931, at *2 (D. Idaho Feb. 9, 2022)……………………………………………………………….……25

*Rhodes v. Motion Indus., Inc.*, No. 1:07-CV-251, at *6 (E.D. Tenn. Oct. 17, 2008)…29

*SDG Dadeland Assoc v. Anthony*, 979 So. 2d 997, 2008 Fla. App. LEXIS 1876 (8008)……………………………………………...…………………………..20

*Stewart Title Guar. Co. v. Suisse,* 2014 WL 10290846, at *2–3 (D. Idaho Oct. 15, 2014)……………………………………………………….……………….24

*S.M. v. J.K*, 262 F.3d 914, 920 (9th Cir. 2001)………………………….……..28

*United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cisr. 2015)…………..…..8

*United States v. Malagon-Alvarez*, No. 19-10015, at \*5 n.6 (11th Cir. June 2, 2021)………………………………………………………………...…………….9

*United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009)………………..9

*United States v. Harris*, 443 F.3d 822, 823-24 (11th Cir. 2006)…………………9,13

*United States v. Rhodes*, 713 F.2d 463, 469 (9th Cir. 1983)……………………………………………………….……………..4,20

## MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN REPLY

I.    **Summary of Appellant's Position(s) on Appeal**.

In this appeal, Plaintiff Sandra M. Meza-Perez contends, as previously filed in the opening brief, that numerous rulings during the lower court proceedings were erroneous, including pre-trial, trial, and post-judgment decisions. *See* Appellant's Opening Brief ("AOB").

First, Appellant argued that the District Court erred by denying Appellant's oral motion for a mistrial and her subsequent written Motion for a New Trial, necessitating reversal. The District Court's April 7, 2023, Order [ECF No. 459] denying Plaintiff's post-trial motions [ECF Nos. 433-440] was erroneous and an abuse of discretion, requiring reversal of these rulings on evidence during the trial. *See* AOB at 19-21 citing 1-ER-2-27; 1-ER-50-70.  The jury verdict entered on September 2, 2022 [ECF No. 420], and the Judgment entered on September 6, 2022 [ECF No. 424], were not supported by the evidence, necessitating reversal. AOB at 37-40, citing 3-ER-676-689.

The Costs Taxed [ECF Nos. 457 and 458] stemming from the Bill of Costs filed by Defendant Zachary Ceballes [ECF No. 428] and Defendant Sbarro [ECF No. 429] should be reversed and set aside in conjunction with an Order overturning the verdict and judgment. *See* AOB at 51 citing 1-ER-28-44. The District Court's Ruling in

Minute Order [ECF No. 381], denying Plaintiff's motions and ruling on the issue of peremptory challenges, must be reversed as erroneous. *See* AOB at 51-52 citing 1-ER-4 6; 13-ER-3390-3475. The District Court's rulings in Minute Orders [ECF Nos. 342 and 319] must also be reversed as erroneous and an abuse of discretion. *See* AOB at 48-49 citing 1-ER-47; 55-ER-3740.

The proceedings were prejudiced from the outset by the District Court's erroneous handling of summary judgment issues. The District Court's order granting in part Defendants' Motion for Summary Judgment [ECF No. 181], and the related denials of Motions for Clarification and to Reconsider, were erroneous and an abuse of discretion. *See* AOB at 38 citing 19-ER4234; 19-ER-5188; 18-ER-4954-5186; 17-ER-4799. The District Court erred in its pretrial procedural rulings, including the withdrawal of Appellant's former counsel, refusing to extend discovery early in the litigation, and denying Appellant's second motion to continue trial.

As argued in her Opening Brief, the District Court erred when ruling on pretrial procedural matters, including the withdrawal of Appellant's former counsel, refusing to extend discovery early in the litigation, and denying Appellant's second motion to continue trial. *See* AOB at 45-46, citing 16-ER-4419; 1-ER-49.

Appellant now responds to the Answering Briefs filed by Respondent Sbarro (Dkt. No. 46) and Respondent Cabelles (Dkt No. 43). To the extent not every argument

raised in Opening Brief is re-addressed herein, such is in the interest of judicial economy and is not to act as any waiver. *Id*.

## II.    <u>Summary of Respondent Sbarro's Position(s) on Appeal.</u>

Respondent Sbarro argues that Perez's appeal should be denied on multiple grounds. First, the claims against Sbarro are argued to have been time-barred by the statute of limitations, which negates the need for the Court to consider her arguments further. *See* SAB at 38 citing 1-SER-46-47.

Second, Sbarro argues that the case largely hinges on credibility determinations, a function exclusively within the jury's purview, which they argue prevents the relief requested on appeal. *See* SAB at 40, citing 5=ER-1037; 5-ER-1079-80.

Third, Respondent Sbarro argues that Perez's individual claims of error lack merit. They allege that Appellant's approach, which broadly challenges nearly every disputed issue at all stages of the trial process, diminishes the legitimacy of her complaints, ignoring the fact that Appellant's decision to raise every claim in which she finds merit is not indicative of the invalidity of any claim (and indeed failing to raise such issues would constitute waiver, as Sbarro conveniently argues with respect to various non-objections below). *See* SAB at 37-338. Sbarro's arguments as such should be rejected by this Court.

### III.     Summary of Respondent Ceballes's Position(s) on Appeal.

Respondent Ceballes argues that Perez's appeal against Ceballes should be denied because the case fundamentally revolves around credibility determinations, which fall exclusively within the jury's jurisdiction. Respondent further argues that, the central issue was whether the relationship between Perez and Ceballes was consensual. Ceballes further argues and asserts that the Court does not overturn factual findings unless it has a "definite and firm conviction that a mistake has been committed" *Jordan v. Clark,* 847 F.2d 1368, 1375 (9th Cir. 1988).

For the reasons set forth herein, Ceballes's arguments must likewise be rejected by this Court.

### IV.     Reply Arguments as to Respondents' Answering Briefs.

### Statute of Limitations Arguments

Respondent Sbarro argues that this Court may dispense with the entirety of Appellant's claims because her claims for relief below were barred by the statute of limitations. *See* Sbarro's Answering Brief ("SAB") at 38-39.

This argument must be rejected. First, Respondent relies upon cases which are procedurally entirely distinct from the present situation. For example, Respondent relies upon *Rhodes v. Raytheon Co.* where the District Corut had "dismissed the case as [below] as the limitation period is strictly enforced." *See United States v. Rhodes*, 713 F.2d 463, 469 (9th Cir. 1983).

Here, in contrast, the majority of Appellant's claims went through a complete trial and were resolved on the merits. In other words, Sbarro wants this Court to go beyond any of the District Court's findings relating to any statute of limitations argument raised below and now hold that all of Appellant's claims, even those claims not dismissed by the District Court upon summary judgment, are in fact barred by the Statute of Limitations.

There are at least two procedural problems with this argument. The argument is either, essentially, an appeal of the District Court's order not granting full summary judgment upon statute of limitations arguments, as to all claims, where Respondent did not actually appeal these determinations, and as such they are not before the Court. Alternatively, the argument would go beyond those arguments and issues considered below, and thus asking for relief for the first tiem on direct appeal. This Court "may consider an issue raised for the first time on appeal under certain "exceptional circumstances," *AlohaCare v. Hawaii*, *Dep't of Human Servs.*, 572 F.3d 740, 744-45 (9th Cir. 2009), but this case does not present such circumstances *Bank of N.Y. Mellon v. 886 Park Walk Tr.*, No. 19-16281, at *2 (9th Cir. July 13, 2020).

Or else the argument is simply inaccurate with respect to the issues presently before this Court. Appellant is clearly entitled to appeal the lower court's rulings finding that the statute of limitations applied to certain claims, and indeed, these issues are raised in Appellant's Opening Brief. Claiming that the statute of limitations applies

to bar consideration of an appeal of, among other issues, whether statute of limitations issues were correctly determined, is nothing more than circular logic which must be rejected.

Finally, Sbarro is simply incorrect that the statute of limitations can be applied in this manner on direct appeal. The doctrine of equitable estoppel should apply, given the extraordinary circumstances of duress Perez faced, which justifies tolling the statute of limitations, as was fully briefed before the District Court below, and further discussed in Opening Brief.

Perez contended that the defendants should be equitably estopped from asserting the statute of limitations as a defense because Ceballes, from the time of his initial assault through December 2016, threatened her with physical harm, job termination, and deportation if she reported his conduct. *See Ateeq v. Najor*, 19 Cal. Rptr. 2d 320 (Cal. Ct. App. 1993), which held that the defendant was estopped from asserting the statute of limitations defense where threats of deportation caused the plaintiff to delay in filing suit. *Id*.

Given the severe abuse and threats Perez endured, equitable estoppel should have tolled the statute of limitations, to the extent the District Court granted relief upon those arguments below.

Furthermore, the Ninth Circuit applies a rebuttable presumption that a right-to-sue letter is received three days after issuance. Perez should be permitted to challenge

this presumption below in the District Court upon an evidentiary hearing, rather than on direct appeal, with this matter squarely before the finder of fact. Appellant previously testified that she does not know when she received the letter, but if the Respondent now seeks to narrowly focus on this issue, it would be most appropriate to have more thorough evidentiary hearings below rather than asking this Court to make a determination of timelines based upon the sparse factual record before it. Courts have recognized that postal delays can impact the receipt date, and strict adherence to the three-day presumption can lead to unfair outcomes. *Henderson v. AT&T Corp.*, 939 F.2d 465 (9th Cir. 1991), allowed plaintiffs to rebut the presumption with evidence suggesting an alternative timeline.

Furthermore, Perez's allegations of continuous threats and abuse by Ceballes establish a period of duress that should toll the statute of limitations. The doctrine of equitable tolling supports that days during a tolled period are not counted against the limitations period, regardless of the date of actual receipt or the 3-day-letter now referenced by Respondent Sbarro.

The District Court's summary judgment rulings were thus erroneous, applying an overly narrow view of the tolling evidence. Perez's motions to correct these errors were wrongfully denied, warranting reversal and remand. To the extent that Respondent Sbarro now seeks to go *even further* and impose a broader summary

judgment against Appellant on direct appeal, such is inappropriate for the reasons set forth and must be rejected.

### Attorney Misconduct was Established and Warrants Reversal and Remand

Respondent Sbarro makes numerous arguments against granting relief for attorney misconduct, and the failure to grant an appropriate mistrial, which occurred below. Respondent's arguments should be rejected

First, Sbarro argues that Appellant cannot seek relief because of the doctrine of invited error. *See* SAB at 43-45. This argument must be rejected, as invented error does not apply. Appellant is not required to stipulate to a proposed remedy which does not cure the identified prejudice, and indeed, many such purported remedies are known to only draw jurors' attention to the improperly-admitted references, and as such are not curative in the first place, let alone *sufficiently* curative as to require stipulation in order to avoid application of the invited error doctrine.

Furthermore, in other contexts this Court has held that invited error does not displace the District Court's "ultimate responsibility for ensuring the jury understands how to evaluate" evidence. *United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015). In that case, this Court declined to find invited error where the Appellant was solicited but failed "to offer an instruction about dual role testimony" but later complained of instructional error on appeal. *Id*.

Indeed, the opposite implication may have applied if Appellant had instead *accepted* the curative instruction. Where counsel accepts that a curative instruction "would be instructive," this failure to challenge the matter further and acquiesce to the proposed cure may "invite error" if the cure is later argued to have been insufficient. *See United States v. Malagon-Alvarez*, No. 19-10015, at *5 n.6 (11th Cir. June 2, 2021)("This concession by Mendoza's counsel potentially forecloses his challenge to the remark under the invited-error doctrine because he represented to the district court that the curative instruction "would be sufficient." "[T]he doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (quotation omitted). And when "a party invites error, [we are] precluded from reviewing that error on appeal." *United States v. Harris*, 443 F.3d 822, 823-24 (11th Cir. 2006) (quotation omitted).

The Respondent argues that Perez's failure to accept a curative instruction negates her claim of attorney misconduct and that this failure constitutes invited error. However, the inflammatory nature of the allegations against counsel meant that any curative instruction would have only highlighted the prejudicial statements, exacerbated the harm and necessitating a mistrial.

The presumption that juries follow curative instructions does not apply when the instructions themselves could cause further prejudice. The allegations against

counsel were so inflammatory that highlighting them through a curative instruction would have reinforced their negative impact, drawing the jury's attention to them in a manner that could not be neutralized.

The severity of the allegations required more than a curative instruction; it necessitated a mistrial. The inflammatory nature of the statements against counsel created an environment where the jury's impartiality was compromised. Here, the allegations were so egregious that they undermined the fundamental fairness of the trial, making a mistrial the appropriate remedy.

The Respondent's argument that Perez's refusal of a curative instruction constitutes invited error is unfounded. The inflammatory nature of the allegations against counsel meant that curative instructions would have only heightened the prejudice, necessitating a mistrial. The doctrine of invited error is inapplicable, as identified herein, there is no requirement that Appellant stipulate to an insufficient (or even counter-productive) remedy in order to pursue a matter on direct appeal. Reversal and remand are required.

For these reasons, Appellant has not lost the ability to appeal the District Court's orders merely because Appellant declined to stipulate as to the sufficiency of a proposed remedy.

### *Sbarro's Attacks on Counsel were Flagrantly Improper*

Sbarro's argument that its comments were proper lacks merit, primarily because it fails to provide any citations supporting its position. Furthermore, even if the alleged facts about what counsel did wrong are accepted as true, they are de minimis in comparison to the nature of the allegations and the language used. Attacks on counsel can heavily influence a jury's perception, and the comments made by Sbarro's counsel went far beyond what could be justified by the facts.

The district court noted it was "troubled" by the references and "attacks" on Ms. Sull during the opening statements. This concern is significant, as it underscores the prejudicial nature of the comments made by Sbarro's counsel. The statements suggesting that Perez and her legal team engaged in a "scorched earth smear campaign" and committed "relentless character assassination" were not merely supported by evidence but were inflammatory and intended to prejudice the jury against the plaintiff and her counsel.

Sbarro claims that Attorney Sull's representation of Perez, including her involvement in immigration proceedings and the filing of complaints, justifies their comments. However, Sbarro fails to provide specific legal citations or precedent that would support such an approach. Without these citations, Sbarro's arguments lack the necessary legal foundation to substantiate their claims of propriety.

Moreover, the alleged misconduct related to the immigration process is tangential and does not justify the broad and inflammatory language used. It is an

entire leap of logic to equate procedural issues in immigration court with the severe allegations made during the trial. The inflammatory comments were designed to paint Perez and her counsel in the worst possible light, thus prejudicing the jury.

Even if Attorney Sull had made procedural missteps, these are minor in light of the grave nature of the allegations against Sbarro. The focus should remain on the substantive claims of the case, not on extraneous attacks on the character of Perez's legal team. The real issue is the appropriateness of the comments made during the trial and their impact on the jury, not the actions of Perez's legal team.

Even if the distinction between argument and evidence is set aside, *Charyulu* is distinguishable for another reason, that being that that case involved causes of action for insurance agent bad faith. *Charyulu v. California Casualty Indemnity Exchange*, 523 F. App'x 478, 480 (9th Cir. 2013). These causes of action inherently put into contest the relative behavior of the insurer's counsel (as this was apparently part of the factual basis for alleged bad faith) as compared to the conduct of plaintiff's counsel during the same time period. *Id*.

This is not what the situation was below. Rather, the conduct of counsel for Respondents suggested repeatedly that Plaintiff's counsel attempted to commit fraud, therefore the jury should be less inclined to *believe Plaintiff's claims*. Evidence of inter-counsel communications is of course relevant evidence to bad faith claims *about those communications*, but a generalized attack on the integrity of counsel to

12

undermine a client's claims is a wholly different sort of attack which is impermissible for good reason. *Bufford v.Rowan Cos*., 994 F. 2d 155, 157 (5th Cir. 1993); *Fireman v. Armstrong World Indus*., 980 F.2d 171, 209 (3d Cir. 1992)("vituperative references to opposing counsel will not to be tolerated"); *Keht v. Smith Barney, Harris Upham &Co.*, 736 F. 2d 1283, 1285-1286 (9th Cir. 1984) (Unsubstantiated accusations that opposing counsel tampered with evidence are grounds for mistrial).

Here, Defendant's counsel, Mr. Hicks, made the following accusations of criminal conduct (Fraud, Conspiracy) against both Ms. Sull and Plaintiff, which unlike *Charyulu* are both (1) not admitted evidence; and (2) not directly relevant to any factual allegations elementary to any raised cause of action or defense:

(1) Plaintiff and her immigration attorney had a motive and a willingness to fan the allegations against Sbarro and Dana *in order to game the immigration system* 5-ER-1052.

(2) Plaintiff's attorney had a "willingness to manufacture allegations" to game the immigration system. *Id.*

(3) In opening argument, a major theme of Defendant Sbarro's opening argument, which was presented to the jury, was that "plaintiff's *immigration attorney led the charge"* with Plaintiff to further the ulterior motive of filing this lawsuit to get immigration papers and defraud

13

the federal government which is a felony. 5-ER-1052-1053; *See also* 8 U.S.C. 1325; 18 U.S.C 1546; 28 U.S.C 1746, etc.

(4) During the trial and throughout Defendants opening arguments, the concept of the defense was that *Appellant's attorney at trial, Sull,* was a fraudster in an effort to prejudice that jury against Appellant herself: "Plaintiff and her legal team accused dana…" … "plaintiff and her immigration attorney had a compelling motive and willingness to manufacture allegations against Sbarro in order to game the immigration system" and "Here, plaintiff's immigration attorney led the charge against Sbarro…" and "plaintiff and her immigration attorney were throwing every possible argument against the wall to see what sticks in order to gain her immigration papers…" and "Plaintiff and her attorneys tried to bully and intimidate Dana and Sbarro…" 5-ER-1050-1055.

The Jury was told, over and over, that Ms. Sull assisted, "led the charge", 'game[d] the Immigration System" in this fraud on the Immigration court, because she had the same ulterior motive. 5-ER-1052-1053. Perpetrating a fraud on the

Immigration Court (or any Court, for that matter) is a felony. Defendants accused Ms. Sull, and Plaintiff of committing a felony. *Id; See also* 8 U.S.C. 1325; 18 U.S.C 1546; 28 U.S.C 1746, etc.

If Respondents believe that Appellant's counsel signed her name to "false allegations," or in other words, attempted to commit fraud in judicial proceedings, they have remedies which are far more appropriate than waiting for the case to go to trial and then ambushing counsel, in front of the jury, in a flagrant attempt to prejudice the jury as to one of the attorneys conducting trial. For example, the aggrieved party (if these claims were accurate) can move for various forms of sanctions, including federal Rule 11 sanctions, which in fact occurred in this case as the proper remedy for these allegations. The one thing Respondents cannot do is attempt to prejudice Appellant's claims because of the alleged wrongdoing *of her attorney(s)* when that alleged wrongdoing has not been litigated through the appropriate channels (such as sanctions).

### *Appellant Distinct Actor from Counsel*

Next, Respondent Sbarro argues that this was all appropriate because witnesses testified that Perez told them she was going to "get her papers" in reference to her immigration status. *See* SAB at 47-48. These arguments are likely completely devoid of any logical support for Respondent's chosen path of accusing Appellant's counsel of, among other things, fraud, in front of the jurors.

The testimonies that Perez mentioned "getting her papers" through her allegations, and her immigration expert's admission that her claims could support a T or U Visa application if true, are valid lines of inquiry to challenge Perez's motives and credibility. These aspects directly relate to Perez's potential incentive to fabricate her allegations and are entirely appropriate for cross-examination. However, attacking her counsel's integrity in front of the jury crosses a line and shifts the focus from the substantive issues at hand to personal attacks that can bias the jury's perception.

The Respondent highlights that Perez's counsel elicited false testimony about her immigration status, which the district court noted with concern. This is a legitimate issue to address, but it should be handled through proper legal channels, such as evidentiary objections or motions, rather than through prejudicial statements to the jury. Accusing counsel of fraud in front of the jury not only distracts from the core issues but also undermines the fairness of the trial. This tactic can lead the jury to make decisions based on their perception of the attorneys rather than the evidence.

Moreover, the Respondent's argument fails to recognize that the proper forum for addressing any alleged misconduct by counsel is through judicial procedures, not through comments aimed at influencing the jury. If there were concerns about fraud or misrepresentation by Perez's counsel, these should have been addressed through motions for sanctions, disqualification, or other appropriate remedies within the

court's oversight, rather than through statements designed to sway the jury's opinion improperly.

The comparison to Perez's credibility and potential motives is also misplaced. While Perez's possible misrepresentations and motives are central to assessing her credibility, these points should be explored through direct and cross-examination of Perez herself. This approach allows the jury to evaluate the evidence and testimony directly related to the claims without being unduly influenced by accusations against her legal representation.

The district court's expression of concern about a potential fraud on the court does not justify transforming these concerns into public accusations against counsel during the trial. The court's role is to ensure a fair trial based on the merits of the case, not to allow one party to undermine the other through unsubstantiated and prejudicial claims.

### *Improper Opening Statement References to Non-Evidence*

Next, Sbarro argues that its comment that "[i]t's now clear, a hundred percent clear – plaintiff and her lawyers will admit it at some point – that these public accusations were 100 percent false, demonstratively false," was not inappropriate because it was not instructing the jury what evidence it would hear, but rather, allegedly was directing the jury to what counsel for Sbarro *expected to be conceded during closing argument*. *See* SAB at 48-49. Respondent characterizes the

understanding that the jurors would have believed this reference to important *evidence* of such admissions as "speculation." *Id* at 49.

Either Sbarro was intentionally using opening statement for something other than its authorized purpose (to preview admissible evidence for the jurors and state what is going to be proven), or else Sbarro was misinstructing the jurors about what *evidence* would be admitted. To the extent Respondent wants to now claim it was engaged in one violation instead of another, even if this Court accepts this explanation, it is nevertheless an admission of improper opening statement, which now warrants reversal (or forms part of the cumulative grounds warranting reversal).

### *Micro and Macro Aggressions are Appropriately Before this Court*

The Respondent's assertion that Sbarro's diversity and immigrant background negate Perez's claims of micro and macro aggressions is not dispositive of whether such aggressions occurred. The presence of a diverse workforce and immigrant founders does not preclude the possibility of racial animus in specific instances, nor does it address the specific allegations of micro and macro aggressions directed at Perez and her counsel.

The record, including the supplemented record now before this Court on appeal, establish the pervasive attorney misconduct (through micro and macro aggressions) demonstrated below. Moreover, the argument that Sbarro's actions were not racially motivated in some instances does not preclude the possibility that racial animus

influenced other instances. Each allegation of micro or macro aggression must be considered on its own merits, and the broader diversity of the company does not automatically negate specific claims of racially motivated behavior. The court must evaluate the particular context and circumstances of each alleged incident to determine whether racial animus was a factor.

The matter is properly before the Court upon a motion to supplement the record filed with this Court and the matter has been fully briefed and litigated in the advance of briefing. *See* Dkt No. 26, Motion to Supplement Record on Appeal.

Lastly, the Respondent's argument that Attorney Sull's limited role, due to the existence of co-counsel, and thus in front of the jury, undermines the claims of racial animus, is flawed. The overall environment and interactions during the trial can influence perceptions and treatment, regardless of the visibility of certain individuals to the jury. Most importantly the bell of extreme prejudice against Appellant via her counsel during opening argument is not mitigated just because co-counsel existed and handled an array of tasks; it is not as though the jury forgot the counsel for Appellant was present alongside her, as her attorney, throughout trial, which should be the controlling fact here on appeal.

### A Mistrial was Warranted and Required

Next, Respondent Sbarro argues that even if the statements were improper, they do not create sufficient prejudice to warrant a mistrial. *See* SAB at 52-53.

This argument must be rejected. Defendant's statements in opening argument fatally compromised Plaintiff's right to a fair and legitimate trial. The Court was obligated to declare a mistrial in this matter because Plaintiff's right to a fair and legitimate trial had been fatally compromised by the criminal accusations against trial counsel. "While attorneys are given broad latitude in closing arguments, remarks must be confined to the evidence and to the issues and inferences that can be drawn from the evidence. Arguments that fall squarely within the category of fundamental error require no preservation below, where the basic right to a fair and legitimate trial has been fatally compromised." *SDG Dadeland Assoc v. Anthony*, 979 So. 2d 997, 2008 Fla. App. LEXIS 1876 (8008).

In response, Sbarro cites several cases, all of which involved upholding the denial of a requested mistrial. Each of these cases is totally fact-dependent, and applies a situation-by-situation analysis which offers little to no insight into how this Court should rule in this instance.

For example, Sbarro first cites *United States v. Rhodes*. SAB at 54. This was a multi-defendant criminal cases which involved two improper comments during opening statements by co-defendant counsel. *United States v. Rhodes*, 713 F.2d 463, 469 (9th Cir. 1983). One comment indirectly suggested that one co-defendant remained in custody, and that this fact rebutted his involvement in a vast criminal conspiracy, because if he had been involved, he'd have had the financial resources to

pay bail. This improperly suggested the co-defendants *who had* bailed out did so with nefarious means. A second comment referred to a white co-defendant in a largely African-American-centered case as a "white fly in the bowl of chocolate milk." Neither identified comment involved disparaging counsel or accusing any other attorney involved in the case of fraud. *Id*. Furthermore the statements were ambiguous, and although inappropriate, were confusing enough not to cause immediate and obvious prejudice. *Id*. The District Court properly noted that the "implications of these statements were probably lost on the jury" which was an important finding supporting denial of mistrial. *Id*.

Likewise, the other cases cited by Respondent Sbarro have nothing to do with attorney misconduct *targeting an attorney of a party*, rather than a party themselves. *See Gorio v. Block*, 972 F.2d 1339, 1339 (9th Cir. 1992)(referencing the mafia with respect to a defendant).

In sum, the case law relied upon by Respondent does not constrain this Court in the present matter. This case is uniquely situated and distinguished from most other cases in that *counsel for Plaintiff* was the party attacked, and second, that the nature of the attack was so inherently inflammatory and extreme as to require special attention, and ultimately, reversal and remand, in order to protect Plaintiff's right to a fair trial on the merit of her claims.

## **Order Barring Reference to Rule 11 Sanctions was Circumvented**

Next, Respondent Sbarro argues that it could not have violated the Court's order barring reference to the Rule 11 Sanctions Order, essentially because the existence and name of the Order was never explicitly referenced. SAB at 60-61. This argument should be rejected.

The Respondent, Sbarro, tacitly admits that it used the Rule 11 sanctions to undermine counsel's credibility during the trial, despite not explicitly mentioning the Rule 11 order. This approach is equally damaging and inflammatory, as it effectively communicated the same prejudicial content to the jury under a different guise, as it sought to attack *counsel herself* with the substance of the Rule 11 sanctions Order, without informing the jury of what it was doing.

While Sbarro claims that it did not violate the district court's ruling by directly referencing the Rule 11 sanctions, it nonetheless achieved the same effect by repeatedly pointing out and denigrating Perez's counsel, including the allegations of (in essence) fraud based upon findings of erroneous factual claims, as identified in the Rule 11 sanction order. This strategy was aimed at discrediting counsel in front of the jury, thereby inflaming the jury against Appellant's counsel and tainting the trial's fairness. By focusing on the involvement of Attorney Sull in both the immigration proceedings and Sbarro's and NERC's investigations, Sbarro highlighted the very allegations of fraudulent conduct that were central to the Rule 11 sanctions. This

22

indirect approach allowed Sbarro to suggest impropriety and misconduct without explicitly mentioning the Rule 11 order, thus skirting the court's ruling while still achieving the intended prejudicial impact.

The Respondent's own brief underscores this point by justifying their actions, with respect to their comments during opening statements, as having been based on the findings of fraudulent factual claims linked to the Rule 11 order, and thus having been rooted in fact rather than mere inflammatory rhetoric. This admission reveals that Sbarro's intent was to discredit Perez's counsel in front of the jury, leveraging the Rule 11 findings without directly mentioning them. Such tactics are impermissible.

Sbarro's actions during the trial, which aimed to discredit Perez's counsel by leveraging the Rule 11 findings without explicitly mentioning them, were improper and prejudicial, and clearly (as now admitted on appeal) were the underlying genesis of the out-of-the-gate barnstorming attack against undersigned counsel personally during opening statements. The district court's ruling sought to protect the trial's fairness by excluding the Rule 11 sanctions, and Sbarro's indirect references subverted this intent.

### **Pretrial Rulings on Motions in Limine, Including Regarding Dr. Roitman**

Next, Respondent Sbarro argues that the District Court did not commit error in its pretrial rulings, including its ruling denying Appellant the ability to substitute an expert for the deceased Dr. Roitman. The Respondent's argument that Perez's delay

in substituting a new expert witness after the death of Dr. Roitman was a result of either a strategic decision or negligence by her attorneys should be rejected.

Any delay in addressing the substitution of the expert does not justify denying the request, unless the District Court made a valid finding of bad faith. The timeline of events shows that Perez's counsel acted within a reasonable period after discovering the death of Dr. Roitman, and the procedural intricacies should not overshadow the substantive need for a fair trial. The court's primary duty is to ensure that justice is served, which includes not denying Plaintiff an opportunity to present live expert testimony in support of her case, especially where the properly-noticed expert had unfortunately passed away during the course of the litigation.

This is supported by the case law which rebuts Sbarro's arguments on appeal. In the context of the death of an expert witness, "courts often find good cause to substitute experts." See, e.g., *GF & C Holding Co.,* 2012 WL 5907092, at *1 ("Plaintiff's earlier request to extend the time to disclose its expert because of the untimely demise of [the prior expert witness] clearly met the good cause standard."); *Stewart Title Guar. Co. v. Suisse,* 2014 WL 10290846, at *2–3 (D. Idaho Oct. 15, 2014) (holding that the "untimely passing" of the expert was good cause for substitution); *In re Northrop Grumman Corp. ERISA Litig.*, 2016 WL 6826171, at *3 (C.D. Cal. Apr. 7, 2016); *Brooks v. Cnty. of San Joaquin,* 2012 WL 5927416, at *1

(E.D. Cal. November 26, 2012); *Miesen v. Henderson,* No. 1:10-CV-00404- DCN, 2022 WL 392931, at *2 (D. Idaho Feb. 9, 2022).

It was beyond the discretion of the District Court to act so punitively towards a litigant, Appellant, merely because their central expert witness had passed away during the course of litigation, absent an explicit finding that the party engaged in bad faith for the purpose of attempting to gain an unfair advantage. In most instances, it should be presumed that a party's failure to *swiftly* replace a deceased exert is excusable and not intentional.

The only reasonable remedial legal option reasonably available to the Court in such circumstance was to permit Appellant to replace her central expert witness with the live testimony of a replacement witness, and to continue trial if doing so was necessary to accommodate this. The denial of Appellant's motion was thus an abuse of discretion.

### **Improper Closing Arguments Require Reversal**

Respondent Sbarro also argues that improper closing argument statements by their counsel do not require reversal. SAB at 84-85. It is immaterial whether the improper statements are wholly golden rule, or whether they contain another form of improper argument, or in some instances, a mixture of both. *Id*. Sbarro's argument should be rejected.

As noted in the Opening Brief, the closing remarks contained wide-ranging improper argument, including: (1) denigration of Plaintiff's counsel "And someone else overseeing this, which the lawyers of Sbarro will address, but you've got the sex-slave watchdog over here. That's how far out of whack this got." 12-ER-3306-3307; (2) improper use of argument as to drug use, the fact of Appellant's husband's incarceration; 12-ER-3315; (3) argument to use a verdict to "send a signal" as an instance of improper argument; (12-ER-3319); improper reference to Sbarro being, essentially, a righteous party because they could have settled, a fact not in evidence or not material to the deliberations; (12-ER-3365); various forms of stating the opinion of counsel or else directing the jury to enter a particular verdict as a direct instruction as how to fill out the verdict form rather than an explanatory argument . *See* 12-ER-3340; 12-ER-3348; 12-ER-3350.

The number of instances and severity of the identified improper argument requires reversal and remand under the standard of plain error, and for these reasons Sbarro's arguments must be rejected.

### Response to Respondent Zachary Ceballes's Arguments

Next, Respondent Zachary Ceballes argues that Appellant's F.R.E. 412 arguments are without merit. Respondent's explanation and argument must be rejected as being contrary to the law and the public policy behind Rule 412.

26

Perez's references to her past abuse by her husband were made to provide context and explain her vulnerability, not to introduce her past sexual behavior as an issue. These references are pertinent to understanding her psychological state and the impact of the defendants' alleged misconduct. They do not open the door to irrelevant and prejudicial evidence of consensual sexual activity, which does not bear on the truth of her allegations against the defendants.

There is simply no logical reason the past voluntary sexual conduct between Appellant and her husband (or anyone else) would be relevant to rebut allegations of coercion in the present underlying action. It is a logical fallacy to suggest that because Perez engaged in consensual sex with her husband, her allegations of assault by others are less credible. This approach conflates voluntary sexual activity with non-consensual assaults, which are fundamentally different. This is what the rape-shield law was designed to protect against.

Additionally, the assertion that Perez waived her Rule 412 protections is unfounded. Rule 412(c)(2) requires a specific procedural process for admitting evidence of a victim's past sexual behavior, including a hearing outside the presence of the jury to determine the relevance and admissibility of such evidence. The court did not conduct such a hearing, and the Respondent did not follow the proper procedure to argue for the inclusion of this evidence. Perez's introduction of her past

abuse does not negate the protections afforded by Rule 412, nor does it permit the Respondent to bypass these procedural safeguards.

Rule 412 "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with [the] public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." FED.R.EVID. 412, advisory committee's note (1994 Amendments). A party seeking to admit evidence of past sexual behavior or alleged sexual predisposition bears the burden of demonstrating that the probative value of this evidence substantially outweighs the danger of harm and unfair prejudice. FED.R.EVID. 412(b)(2).

Given the stated purpose of the Rule to protect victims from further trauma and embarrassment, a plaintiff should not be found to have "opened the door" to questions about her sexual history and practices simply by bravely admitting that she has been sexually abused before. Cf. *S.M. v. J.K*, 262 F.3d 914, 920 (9th Cir. 2001) (holding that plaintiff had not "opened the door" to question of an extramarital affair in case alleging that sexual assault by former employer had exacerbated PTSD stemming from childhood sexual abuse – only questions regarding the past abuse were appropriate on rebuttal).

Given that "the Rule 412 test puts 'harm to the victim' on the scale in addition to prejudice to the parties." *A.W. v. I.B. Corp.*, 224 F.R.D. 20, 24 (D. Me. 2004)

(quoting Fed.R.Evid. 412 Advisory Committee notes to 1994 amendments (emphasis in original)), and that Rule 412(b)(2) "revers[es] the usual presumption of admissibility set forth in FED.R.EVID. 403," *Rhodes v. Motion Indus., Inc.*, No. 1:07-CV-251, at *6 (E.D. Tenn. Oct. 17, 2008), the trial court here should have precluded these questions, due to Defendants' failure to comply with Rule 412 and move for the admission of these questions pre-trial in camera. Plaintiff's discussion of her past abuse and her children's abuse could not have "opened the door" to questions about how she flirts and what her sexual practices are. This is nothing other than "blaming the victim" and opening the door to sexual history evidence any time a victim testifies that they have been sexually assaulted, the exact outcome Rule 412 is designed to prevent.

Plaintiff was clearly prejudiced by the admission of this evidence, because whether Plaintiff had been sexually harassed and abused by her work supervisor was the central issue of this case. In fact, nothing can be said to be more inflammatory and prejudicial than the evidence Rule 412 was designed to protect victims against. The improper admission of this evidence over objection, and the later denial of the post-judgment motion raising these issues, now requires reversal. 1-ER-2-27.

## **CONCLUSION**

For the reasons set forth herein, reversal for a new trial upon each of the grounds set forth in the Opening Brief, and both Respondents' Answering Briefs' arguments must be rejected. Reversal and remand is the appropriate remedy.

Dated this 22nd day of July ,2024.

_____/s/Hardeep Sull_____

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel for Appellant,, hereby certify that this brief contains 6.995 words, excluding the items exempted by FRAP 32(f).  The brief's type size and font comply with FRAP 32(a)(5) and (6).   I further certify that this brief complies with the word limit of Circuit Rule 32-1.

Dated this 22nd day of July ,2024.

_____/s/Hardeep Sull_____

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify and affirm that this document was filed electronically with the above Court and served upon all parties registered to receive electronic service in the above-captioned matter, including upon counsel for the Appellees.

Dated this 22nd day of July ,2024.

_____/s/Hardeep Sull_____ _____